OCTAVIO J. VALDES AND HORTENSIA C. VALDES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4279–71, 6659–71, 5672–72. Filed September 17, 1973.

*Manuel Zaiac*, for the petitioners.
*Paul R. Stanton*, for the respondent.

FEATHERSTON, *Judge:* Respondent determined deficiencies in petitioners' income taxes for 1966, 1967, and 1968, and an addition to tax under section 6651(a)[1] for 1967, as follows:

| Docket No. | Year | Deficiency | Addition to tax (sec. 6651(a)) |
|---|---|---|---|
| 4279–71 | 1967 | $3,485.59 | $14.09 |
| 6659–71 | 1966 | 3,141.66 | 0 |
| 5672–72 | 1968 | 5,390.81 | 0 |

The parties have stipulated that, in 1960, petitioners sustained a Cuban expropriation loss which resulted in an $80,806.60 net operating loss carryover after December 31, 1965. The sole issue is whether petitioners made an election as required by section 172(b)(3)(C)(iii) to have the extended foreign expropriation loss carryover provisions of section 172(b)(1)(D) apply in computing their taxable income for the years in controversy.

### FINDINGS OF FACT

Petitioners are husband and wife who were U.S. taxpayers during the taxable years in issue and who currently reside in Hato Rey, Puerto Rico. Petitioners filed their joint Federal income tax returns for 1966, 1967, and 1968 with the Internal Revenue Service.

Petitioners left Cuba and arrived in the United States on or before June 30, 1960. After they became resident aliens of the United States, but before the end of 1960, their business property in Cuba was expropriated by the Government of Cuba. Neither the fair market value of the expropriated property nor petitioners' basis therein is shown; however, the parties have stipulated that, after December 31, 1965,

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.

the net operating loss carryover resulting from the 1960 expropriation was $80,806.60.[2]

Apparently sometime after petitioners had filed their income tax return for 1964, Octavio J. Valdes (hereinafter referred to as petitioner) was advised by a friend that he was entitled to a deduction for his Cuban expropriation losses. Following the advice of his friend, petitioner contacted a bookkeeper. On the basis of the information provided by petitioner, the bookkeeper prepared a claim for refund on Form 843, and, on December 20, 1965, petitioners filed that form with the Internal Revenue Service (the Service).

The Form 843 stated that petitioners' claim was filed for the refund of taxes illegally, erroneously, or excessively collected in the calendar year 1964, and requested the refund of all taxes paid for that year. Other pertinent information provided on the form included the names, address, and social security numbers of petitioners; the district in which the 1964 income tax return was filed; and the amount of the assessment and the amount to be refunded, which were the same. In block 11 on the form, which states "The claimant believes that this claim should be allowed for the following reasons," the response was "We are claiming Cuban Casualty Losses, Revenue Act 1964." This is the only statement filed by petitioners with the Service purporting to be an election under section 172(b)(3)(C)(iii) to carry forward Cuban expropriation losses pursuant to section 172(b)(1)(D).

OPINION

As the law stands without regard to section 172(b)(1)(D), which is an elective provision, an alien whose business property is expropriated by the Cuban Government after he becomes a resident of the United States is allowed a loss deduction under section 165(a) with respect to the property. To the extent that the loss is not consumed as a deduction in the year of the expropriation, it is subject to carryback to each of the 3 preceding years and carryover to each of the 5 succeeding years in accordance with section 172(b), subparagraphs (b)(1)(A)(i), (b)(1)(B), and (b)(2). Cf. *Cayetano R. Ribas*, 54 T.C. 1347 (1970). Thus, if section 172(b)(1)(D) does not apply in the instant case, petitioners' expropriation loss was subject to carryback to 1957, 1958, and 1959, and over to 1961 through 1965, but the unused portion of the loss at the end of 1965 is not deductible for any of the 3 years here in controversy.

---

[2] Sometime before Dec. 5, 1961, several Cuban corporations in which petitioners owned capital stock also were seized by the Government of Cuba, thereby rendering the capital stock worthless. After Dec. 31, 1965, the capital loss carryover resulting from the stock's worthlessness was $500,000, and respondent has conceded that this capital loss carryover is available to petitioners (subject to the limitations contained in secs. 1211(b) and 1212(b)).

We turn then to section 172(b) (1) (D) and related provisions dealing specifically with the carryover of foreign expropriation losses. Believing that "the expropriations by foreign governments which have occurred in recent years represent * * * [an] example of larger than usual losses * * * [and that] the usual 8-year carryover period for losses is inadequate," Congress enacted section 210 of the Revenue Act of 1964, Pub. L. 88–272 (Feb. 26, 1964), 78 Stat. 47. This enactment amended section 172 on net operating losses by adding, along with other provisions, sections 172(b) (1) (D) and 172(b) (3) (C). S. Rept. No. 830, 88th Cong., 2d Sess., p. 65 (1964), 1964–1 C.B. (Part 2) 505, 569–570.

Section 172(b) (1) (D) [3] provides an exception to the general carryover rule, described above, where a taxpayer has suffered a foreign expropriation loss in any taxable year ending after December 31, 1958. In lieu of the carryback otherwise allowable in such cases, this new provision permits a net operating loss attributable to a foreign expropriation loss to be carried forward 10 years.[4] However, section 172 (b) (3) (C) (iii) [5] was added to provide, in pertinent part, that the expropriation-loss-extended-carryover rule shall apply only if "the taxpayer elects (in such manner as the Secretary or his delegate by regulations prescribes) on or before December 31, 1965" to have section 172(b) (1) (D) apply.

Pursuant to section 172(b) (3) (C), temporary regulations were issued on April 2, 1964.[6] These temporary regulations were replaced by substantially identical permanent regulations issued November 11,

---

[3] SEC. 172. NET OPERATING LOSS DEDUCTION.

   (b) NET OPERATING LOSS CARRYBACKS AND CARRYOVERS.—

      (1) YEARS TO WHICH LOSS MAY BE CARRIED.—

        *       *       *       *       *       *       *

      (D) In the case of a taxpayer which has a foreign expropriation loss (as defined in subsection (k)) for any taxable year ending after December 31, 1958, the portion of the net operating loss for such year attributable to such foreign expropriation loss shall not be a net operating loss carryback to any taxable year preceding the taxable year of such loss and shall be a net operating loss carryover to each of the 10 taxable years following the taxable year of such loss * * *

[4] In 1971, Congress amended sec. 172(b)(1)(D) by extending the carryover period for Cuban expropriation losses to 15 years. Pub. L. 91–677 (Jan. 12, 1971), sec. 2(a), 84 Stat. 2061.

[5] SEC. 172(b) (3). SPECIAL RULES.—

   (C) Paragraph (1)(D) shall apply only if—

      *       *       *       *       *       *

      (iii) in the case of a foreign expropriation loss for a taxable year ending after December 31, 1958, and before January 1, 1964, the taxpayer elects (in such manner as the Secretary or his delegate by regulations prescribes) on or before December 31, 1965, to have paragraph (1)(D) apply.

[6] Temp. Regs. sec. 19.1–1 (T.D. 6719) was published in the Federal Register for Apr. 3, 1964, 29 Fed. Reg. 4770. See also 1964–1 C.B. (Part 1) 618. These temporary regulations were superseded by sec. 1.172–11, Income Tax Regs., T.D. 6862 (Nov. 11, 1965), 1965–2 C.B. 57, 69.

1965.[7] They require an electing taxpayer to file, on or before December 31, 1965, his statement of election with the district director in whose office the taxpayer filed his income tax return for the taxable year of the foreign expropriation loss. In general terms, the statement of election is to include: (1) Information identifying the taxpayer; (2) a statement that he elects to have section 172(b)(1)(D) apply; (3) the amount of the net operating loss for the year; and (4) a schedule showing the computation of the foreign expropriation loss. The question in this case is whether the Form 843 filed by petitioners on December 20, 1965, was a sufficient election.

This Court has recognized that literal compliance with all provisions of a regulation on how an election is to be made is not always required. Cf. *Alfred N. Hoffman*, 47 T.C. 218, 237 (1966), affirmed per curiam 391 F. 2d 930 (C.A. 5, 1968). Directions which merely contribute to the orderly and prompt conduct of business but which, if not met within the stated deadline, will cause no prejudice to either party may not be essential. See discussion in *Fred J. Sperapani*, 42 T.C. 308, 329–333 (1964), and cited cases. In other words, a taxpayer may substantially comply with the applicable requirements even though all of the directions of the regulation have not been followed. Cf. *L. S. Ayres & Co.* v. *United States*, 285 F. 2d 113, 115–116 (C.A. 7, 1960).

In ascertaining whether a particular provision of a regulation stating how an election is to be made must be literally complied with, it is necessary to examine its purpose, its relationship to other provisions, the terms of the underlying statute, and the consequences of failure to comply with the provision in question. In *Indiana Rolling Mills Co.*, 13 B.T.A. 1141, 1144 (1928), the question of whether substantial com-

[7] The complete text of Income Tax Regs. sec. 1.172–11(c)(2) and (3) is as follows:

(2) *Taxable years ending after December 31, 1958, and before January 1, 1964.* In the case of a taxpayer who has a foreign expropriation loss for a taxable year ending after December 31, 1958, and before January 1, 1964, the election referred to in paragraph (a) of this section shall be made by filing on or before December 31, 1965, with the district director for the district in which the taxpayer filed his income tax return for the taxable year of such foreign expropriation loss, a statement containing the information required in subparagraph (3) of this paragraph. Such election shall be irrevocable after December 31, 1965. See paragraph (d) of this section for special rules relating to taxable years affected by an election under this subparagraph.

(3) *Information required.* The statement referred to in subparagraphs (1) and (2) of this paragraph shall contain the following information :

(i) The name, address, and taxpayer account number of the taxpayer ;

(ii) A statement that the taxpayer elects under section 172(b)(3)(C)(ii) or (iii), whichever is applicable, to have section 172(b)(1)(D) of the Code apply ;

(iii) The amount of the net operating loss for the taxable year ; and

(iv) The amount of the foreign expropriation loss for the taxable year, including a schedule showing the computation of such foreign expropriation loss.

In addition, if a taxpayer makes the election under subparagraph (2) of this paragraph, the taxpayer shall specify the internal revenue district in which he filed his return for the three taxable years immediately preceding the taxable year of the foreign expropriation loss. * * *

pliance with a statute had been achieved was framed as "What is the essence of the thing required to be done by this statute?"

As an absolute minimum, we think it apparent, for the reasons we shall discuss, that an election under section 172(b)(3)(C) must reflect the taxpayer's unequivocal agreement to take the benefits and burdens of section 172(b)(1)(D) and related provisions.

The reasons for requiring a clear-cut election of the extended carry-over provisions of section 172(b)(1)(D) emerge from a careful study of the related provisions. As noted above, this election carries with it the denial of loss carrybacks as well as an extension of the length of the carryover period. In addition, the election affects the time for making or changing any choice or election relating to the foreign tax credit, sec. 172(b)(3)(D)(i), as well as the application of the statute of limitations on the assessment of deficiencies, sec. 172(b)(3)(D)(ii), and the filing of claims for refund, sec. 172(b)(3)(D)(iii), for certain years.[8]

Furthermore, under section 172(b)(2) [9] the extended carryover election (sec. 172(b)(1)(D)) becomes important in calculating the allowable deduction. If no such election is made, a foreign expropriation loss of business property is treated merely as any other net operating loss in computing the amounts of carrybacks and carryovers from a loss year. However, an expropriation loss to which section 172 (b)(1)(D) applies is treated separately from any remaining net operating loss for the same year. The regular net operating loss not attributable to the expropriation is carried back and used to offset income in the 3 prior years. Then, if any of the regular net operating loss still remains, it is carried forward to the next year and used first. Only after the regular net operating loss is fully applied in a carry-

---

[8] SEC. 172(b)(3). SPECIAL RULES.—

(D) If a taxpayer makes an election under subparagraph (C)(iii), then (notwithstanding any law or rule of law), with respect to any taxable year ending before January 1, 1964, affected by the election—

(i) the time for making or changing any choice or election under subpart A of part III of subchapter N (relating to foreign tax credit) shall not expire before January 1, 1966,

(ii) any deficiency attributable to the election under subparagraph (C)(iii) or to the application of clause (i) of this subparagraph may be assessed at any time before January 1, 1969, and

(iii) refund or credit of any overpayment attributable to the election under subparagraph (c)(iii) or to the application of clause (i) of this subparagraph may be made or allowed if claim therefor is filed before January 1, 1969.

[9] SEC. 172(b)(2). AMOUNT OF CARRYBACKS AND CARRYOVERS.—

\* \* \* \* \* \* \*

\* \* \* For purposes of this paragraph, if a portion of the net operating loss for the loss year is attributable to a foreign expropriation loss to which paragraph (1)(D) applies, such portion shall be considered to be a separate net operating loss for such year to be applied after the other portion of such net operating loss, and, if a portion of a foreign expropriation loss for the loss year is attributable to a Cuban expropriation loss, such portion shall be considered to be a separate foreign expropriation loss for such year to be applied after the other portion of such foreign expropriation loss.

over year will any expropriation loss from the same loss year be used. Thus, the expropriation loss is considered the last portion of the total net operating loss applied in any case, although the expropriation loss carryover from a given year will be applied before the regular net operating loss carryover from any succeeding year. S. Rept. No. 830, 88th Cong., 2d Sess., p. 65, 1964–1 C.B. (Part 2) 505, 570.

These detailed statutory provisions on the consequences flowing from an election of the extended carryover provisions of section 172(b)(1)(D) serve to emphasize the importance of having an unequivocal statement from the taxpayer if he chooses to elect to have that section apply. That Congress fixed a deadline of December 31, 1965, for making the election suggests that a taxpayer was not to be allowed to file an ambiguous statement which would permit him to wait and see whether the benefits would outweigh the burdens of the election in his individual case. Rather, as a minimum, the taxpayer is required to definitely commit himself as to whether he elects to have section 172(b)(1)(D) apply so that the carryback or carryover of his net operating and foreign expropriation losses may be applied and computed and the specially applicable limitations periods can be known with certainty.

Turning to the merits of the instant case, we find that most of the facts were stipulated in a rather sketchy way, leaving gaps which can be filled only, if at all, through hazardous supposition.[10] Based upon the few objective facts which do appear in the record, we think petitioners have not shown that they made an unequivocal election to use the extended expropriation loss carryover provisions.

The claim for refund filed by petitioners for 1964 will not suffice as a section 172(b)(1)(D) election. That document related only to 1964. Nothing on its face suggests it was intended to be an election affecting other tax years. It merely stated "We are claiming Cuban Casualty Losses, Revenue Act 1964," and it sought the refund of only the taxes paid for 1964. It did not commit petitioners in any way as to other tax years, nor did it clearly express their intention to avail themselves of the extended carryover provision.

Petitioners filed nothing which, if the tables were turned (e.g., if a deficiency were assessed for a prior year under section 172(b)(3)(D)(ii) or if a claim based on loss carrybacks were filed), would show that they were committed to that election and its statutory consequences.

[10] Much of petitioners' brief is devoted to an argument that the contents of an amended return filed by petitioners for 1964 should be considered along with the Form 843 stipulated in evidence. No such amended return is in evidence. Since the question whether an election to have sec. 172(b)(1)(D) apply may be important in later years, the parties were informally advised that a motion to reopen the record to permit the amended return to be admitted in evidence would be considered. Petitioner responded that no such amended return could be located.

Nor did they file anything which would alert the Internal Revenue Service to maintain the files needed to verify their subsequent returns under the rules governing the extended carryover election. See *Angelus Milling Co.* v. *Commissioner*, 325 U.S. 293 (1945) ; compare *Georgie S. Cary*, 41 T.C. 214 (1963).[11]

Indeed, the statement in the claim for refund, when objectively viewed, more clearly refers to a section in the 1964 Act *other than* the extended carryover provisions for expropriation losses. Apart from the 1964 Act provisions allowing the section 172(b)(1)(D) election (i.e., section 210 of the Act), section 238 of that Act added 1954 Code section 165(i), which has nothing to do with loss carryovers. This latter provision treated a loss of property arising from a Cuban expropriation as a loss from a casualty within the meaning of section 165 (c)(3). Section 210 of the 1964 Act, when enacted, applied generally to expropriation losses without mentioning Cuba, while section 238 of that Act is specifically limited to losses arising from Cuban expropriations. We think this difference in the language of sections 210 and 238, coupled with the use of the word "casualty" in the Form 843 statement, would lead one familiar with the Act to conclude that the claim for refund referred to section 238 of the Act rather than to section 210.[12]

We recognize that the extended carryover provisions were available to petitioners if they had complied with section 172(b)(3)(C). However, that section requires an election to be made (in such manner as the Secretary or his delegate by regulations prescribes) on or before December 31, 1965. Without the barest showing that a statement was filed with the Internal Revenue Service reflecting petitioners' intent so to elect, we are unable to conclude that petitioners are entitled to the extended carryover provisions.

To give petitioners the benefit of the capital loss carryover provisions, referred to in footnote 2 *supra*,

*Decisions will be entered under Rule 50.*

Reviewed by the Court.

---

[11] Petitioner testified rather cryptically that he had no U.S. earnings prior to 1964, but he gave no substantiating details.

[12] Petitioners' counsel argues on brief that sec. 165(i), as amended and in effect at the time the Form 843 was filed, was inapplicable to petitioners (the amendment limited the section to persons who were U.S. residents in 1958 and petitioners did not become residents until 1960) and that, by process of elimination, the reference was only to sec. 210 of the Act. But an election must be at least informative enough to let the Internal Revenue Service know it is being made, and the Form 843 contained no information as to when petitioners entered this country or that an election of any kind was intended.