ALFREDO F. PEREIRA and MARIA E. S. PEREIRA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent SANDALIO SUAREZ-REAL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pereira v. Commissioner
Docket Nos. 1178-74, 1276-74.
United States Tax Court
T.C. Memo 1975-260; 1975 Tax Ct. Memo LEXIS 113; 34 T.C.M. (CCH) 1116; T.C.M. (RIA) 750260; August 11, 1975, Filed Vincent J. Brennan and Richard B. Wallace, for the petitioners. David M. Berman, for the respondent. RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined deficiencies in petitioners' respective Federal income taxes in the following amounts: Docket No.
Taxable Year
Amount
1178-74
1968
$ 2,671.98
1969
3,398.93
1970
6,648.35
1971
5,698.10
1276-74
1969
1,763.58
1970
14,713.63
1971
1,013.59
*115 The cases were submitted together for our consideration. The only issue for decision in each of the cases is whether petitioners elected, pursuant to the provisions of sections 172(b)(1)(D) and 172(b)(3)(C)(iii), I.R.C. 1954, to carry over Cuban expropriation losses suffered in 1960 to the years here in issue. All of the facts have been stipulated. Petitioners Alfredo F. Pereira and Maria E. S. Pereira were husband and wife, residing in Miami, Florida, at the time of filing their petition herein. Petitioner Sandalio Suarez-Real also resided in Miami, Florida, at the time of filing his petition herein. Prior to 1960, both the Pereiras and Suarez-Real resided in Cuba where they were citizens. At separate times between April 14 and July 4, 1960, all three petitioners arrived in the United States and became resident aliens thereof for purposes of United States income taxes. On October 14, 1960, after each of petitioners had arrived in the United States, the Cuban Government confiscated property which petitioners had until that time owned in Cuba and which had been used in their respective trades or businesses. By reason of this, the Pereiras sustained a loss of $78,000, and Suarez-Real *116 suffered a loss of $45,500. [1]
Neither the Pereiras nor Suarez-Real filed an election on or before December 31, 1965, pursuant to section 172(b)(3)(C)(iii), relating to the extended loss carryover provision in respect of foreign expropriation losses. In 1966 the Pereiras for the first time filed Forms 843, Claim for Refund, in respect of their Cuban confiscation loss. These forms, each of which was dated August 31, 1966, sought refunds of Federal income taxes for the taxable years 1963, 1964 and 1965. On each of these forms they assigned the following reason as the basis *117 for the claimed refunds. I.R.C. Code Section 165(i) as amended by P.L. 88-348 of 6/30/64. Losses sustained by expropriation by the Government of CUBA October 14, 1960 Suarez-Real also filed Forms 843 claiming refunds for each of the taxable years 1964 through 1967 in respect of his Cuban expropriation loss. The earliest two of such forms related to the taxable years 1964 and 1966; they were dated September, 1967, and were received by the Internal Revenue Service on April 1, 1968. He later filed amended forms in respect of those years as well as refund claims for 1965 and 1967, all of which were dated October 5, 1968, and were received by the Internal Revenue Service shortly thereafter. As his reason for being entitled to refunds, petitioner cited Code section 165(i) in language identical to that used by the Pereiras. [2]
On their several and respective Federal income tax returns for the years here in issue, petitioners claimed deductions for net operating losses in respect of their Cuban expropriation losses suffered in 1960. *118 In separate deficiency notices the Commissioner determined that the net operating loss deductions were not allowable because petitioners failed to file valid elections under section 172(b)(3)(C)(iii) on or before December 31, 1965, and were therefore not entitled to carry their net operating losses resulting from Cuban expropriation beyond the year 1965, as provided in section 172(b)(1)(D). An alien who, having become a United States resident, thereafter loses his business property through expropriation by the Cuban Government is entitled to deduct the amount of his loss under section 165(a) in the year of expropriation. See Cayetano R. Ribas,54 T.C. 1347, 1349. In the event that his gross income in that year does not offset the entire loss, sections 172(b)(1)(A)(i) and 172(b)(1)(B) provide that the unused portion of the loss shall be carried back three years and then forward five years, except in certain enumerated circumstances. Thus, in the absence of the statutorily specified circumstances, the last year to which petitioners might have carried forward their 1960 losses was 1965, with the result that the unused portions of those losses would not have been deductible *119 in any of the taxable years in issue here. One of the enumerated exceptions to this general rule appears in section 172(b)(1)(D) which provides that a foreign expropriation loss may be carried forward 10 years, and in the case of Cuban expropriation 15 years, in lieu of any carryback at all. The availability of this extended carry-forward is not, however, without conditions, among which is the requirement of section 172(b)(3)(C)(iii), which provides that section 172(b)(1)(D) shall apply only if: (iii) in the case of a foreign expropriation loss for a taxable year ending after December 31, 1958, and before January 1, 1964, the taxpayer elects (in such manner as the Secretary or his delegate by regulations prescribes) on or before December 31, 1965, to have paragraph (1)(D) apply. (Emphasis supplied.) Petitioners concede that they did not file elections on or before December 31, 1965, but they nevertheless contend that by their later filed claims for refunds for taxable years ending on or before December 31, 1965, they satisfied the election provision of section 172(b)(3)(C)(iii). We do not agree. The statutory language could not be more clear. Congress set a date certain, *120 December 31, 1965, after which these taxpayers could no longer elect to use the extended carryover provision of section 172(b)(1)(D). There is nothing in the statute, or in the accompanying regulations, which in any way indicates a correlation, as suggested by petitioners, between the time fixed for this election and the time prescribed for claiming refunds for taxable periods ended on or before December 31, 1965. The statute is unequivocal; December 31, 1965, was the last day on which petitioners could have filed elections. They failed to do so, and it is certainly not within our power to grant an extension to petitioners. Cf. Armando Garrido,32 T.C.M. 688. Moreover, it seems clear that, pursuant to Octavio J. Valdes,60 T.C. 910, 914-916, the claims for refund did not in any event constitute valid elections, irrespective of the time they were filed. For these reasons we conclude that petitioners were not entitled to carry over their Cuban expropriation losses suffered in 1960 to any of the years here in issue. Decisions will be entered for the respondent.
Footnotes
1. In addition to the aforementioned business property, Suarez-Real had, prior to his departure from Cuba, owned stock in two companies, LaPaz, S.A. and the Habana Biltmore Yacht and Country Club. On March 19, 1960, the assets of the latter were "intervened" by the Cuban Government. The record does not disclose when in 1960 Suarez-Real sustained a loss in respect of the LaPaz stock. However, the parties have stipulated that such loss was "not sufficient to give rise to a capital loss for the years involved in this proceeding". The Pereiras owned no capital stock prior to their entry into the United States.↩
2. On his original refund claims for the taxable years 1964 and 1966, Suarez-Real relied upon Code sections 165(c)(1) and 172(b)(1)(A)(i)(B) (sic↩).