JOAQUIN CABRERA and EMELIA CABRERA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cabrera v. Commissioner
Docket No. 800-74.
United States Tax Court
T.C. Memo 1975-258; 1975 Tax Ct. Memo LEXIS 111; 34 T.C.M. (CCH) 1110; T.C.M. (RIA) 750258; August 11, 1975, Filed Forney B. Stafford, for the *114 petitioners. Paul R. Stanton, for the respondent. RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined deficiencies in petitioners' Federal income taxes for the years 1967 through 1971 in the following amounts: Taxable Year
Amount
1967
$ 3,281.80
1968
16,163.83
1969
6,703.08
1970
2,816.73
1971
3,653.76 The only question presented is whether petitioners elected, pursuant to section 172(b)(3)(C)(iii), I.R.C. 1954, to carry over their Cuban expropriation loss suffered in 1960 to the years here in issue. All of the facts have been stipulated. Petitioners Joaquin and Emelia Cabrera were husband and wife, residing in Miami Beach, Florida, at the time of filing their petition herein. Petitioners became residents and taxpayers of the United States on April 11, 1959. Subsequent thereto in 1960, the Cuban Government expropriated business property belonging to petitioners, resulting in a loss of $175,000. During the same year petitioners also sustained capital losses of $50,000 in respect of worthless securities and long term capital losses of $95,413 in respect of domestic investments, none of which are in issue here. In 1965 *115 petitioners filed a joint Federal income tax return for 1964 on which they claimed a net operating loss deduction with the following explanation attached thereto: Loss from Confiscation of Business Property by Castro Under Section 172(K) [sic] of the Revenue Code of 1954
Fair Market Value of Property
on December 31, 1958
[300,000.00)
Applied Against 1961 Income
3,500.00
[296,500.00)
Applied Against 1962 Income
2,938.00
[293,562.00)
Applied Against 1963 Income
1,698.07
Carried Over to 1964
[291,863.93) Petitioners did not file any other document purporting to be an election under section 172(b)(3)(C)(iii). As of January 1, 1966, petitioners had an unused net operating loss carryover of $157,931.93; petitioners' taxable income in 1966 was $8,377.16. In each of the years 1967 through 1971, petitioners filed joint Federal income tax returns on each of which they claimed a deduction in respect of the then unused portion of their net operating loss. In each instance they attached to the return a statement citing section 172(k) as authority for their claimed deduction. In his notice of deficiency, the Commissioner determined that petitioners "did *116 not file a proper election under section 172(b)(3)(C)(iii)" on account of which petitioners were not entitled to a net operating loss deduction in any of the taxable years in issue. The controversy here concerns petitioners' attempt to carry over the unused portion of their 1960 expropriation loss to the years in issue. Although section 172(b)(1)(B) generally permits a net operating loss carryover only to the five taxable years following the year of loss, section 172(b)(1)(D)[1] provides an exception to this rule in the case of a "foreign expropriation loss (as defined in subsection (k))" for taxable years ending after December 31, 1958, which may be carried over to each of the 10 taxable years following the year of loss (and 15 taxable years with respect to a "Cuban expropriation loss"). Section 172(k), [2] a non-operative provision, simply defines the terms foreign expropriation loss and Cuban expropriation loss "[For] the purposes of subsection (b)". However, the benefits of section 172(b)(1)(D) (and the attendant burdens) [3] are not automatically available in the case of such losses. Section 172(b)(3)(C)(iii) provides that paragraph (1)(D) shall apply only if: (iii) in the *117 case of a foreign expropriation loss for a taxable year ending after December 31, 1958, and before January 1, 1964, the taxpayer elects (in such manner as the Secretary or his delegate by regulations prescribes) on or before December 31, 1965, to have paragraph (1)(D) apply. The accompanying regulations [4] require an electing taxpayer to file a statement of election, the principal features of which are: (1) Information identifying the taxpayer; (2) a statement that he elects to have section 172(b)(1)(D) apply; (3) the amount of the net operating loss for the year; and (4) a schedule showing the computation of the foreign expropriation loss. The parties agree that if the explanatory statement on petitioners' 1964 income tax return constituted an election, petitioners were entitled to carry over their Cuban expropriation loss to the years in issue. We think that they have satisfied the election requirements. *118 The nub of the issue is whether, by citing section 172(k), petitioners indicated to the Commissioner their "unequivocal agreement to take the benefits and burdens of section 172(b)(1)(D) and related provisions". Octavio J. Valdes,60 T.C. 910, 914. As we read section 172, subsection (k) is one of the several components which together form the statutory pattern governing carryovers in respect of foreign expropriation losses. It has no purpose but to delineate the type of loss to which the operative language of subparagraph (b)(1)(D) applies. Indeed, the availability of the extended carryover under (b)(1)(D) is expressly predicated upon satisfying the definitional provisions of subsection (k). And for that reason the applicability of subsection (k) is coextensive with that of subparagraph (b)(1)(D), both of which occur only in those situations in which the taxpayer makes the required election under section 172(b)(3)(C)(iii). That being the case, petitioners' express reliance on section 172(k) could have referred only to their intention of following the statutory pattern for extended carryovers contained in subparagraphs (b)(1)(D), (b)(3)(C) and (b)(3)(D), and we consider *119 this to have been sufficient to put the Commissioner on notice that petitioners had elected to be bound by the conditions stated therein. The Commissioner nonetheless contends that nothing in petitioners' 1964 income tax returns specifically indicated their commitment to be bound by the extended carryover provisions. In fact, he argues that their reference to Castro compels the conclusion that they thereby chose to treat their loss as one arising under section 165(i), the only provision of the Code at that time which dealt specifically with losses suffered as a result of expropriation by the Cuban Government. [5] This interpretation, however, cannot be reconciled with petitioners' specific reliance on section 172(k) and the incompatible limitation contained in section 165(i)(2)(C) which expressly renders section 165(i) losses ineligible for treatment as expropriation losses within the meaning of section 172(k). Furthermore, petitioners' statement identified their expropriated property as "business property". Inasmuch as section 165(i)(1)(B) makes the provisions of section 165(i) inapplicable to losses incurred in a trade or business, it is particularly awkward to conclude that petitioners *120 intended thereby to invoke the provisions of section 165(i). Likewise, although petitioners' statement included the property's fair market value as of December 31, 1958, information referred to by section *121 165(i)(2)(B), we think that, in light of their unambiguous reliance on section 172(k), the Commissioner could not reasonably have concluded that petitioners thereby sought to disavow their reliance on section 172(k) in favor of section 165(i). By identifying their expropriated assets as business property in their election, petitioners restricted themselves to claiming a loss deduction only under section 165(c)(1). And for purposes of section 165(c)(1), the amount of the deductible loss is determined by reference to the adjusted basis of the property, not its fair market value. See section 165(b), I.R.C. 1954; sections 1.165-1(c)(1) and 1.165-7(b)(1), Income Tax Regs. Thus, regardless of the fact that in their election petitioners used the fair market value of their expropriated assets, the very nature of their loss made that figure irrelevant to the deduction which they sought. In these circumstances it is unreasonable for the Commissioner to conclude from this error that petitioners instead sought thereby to abandon their express reliance on section 172(k) in favor of section 165(i). [6] The Commissioner received clear notice that petitioners had chosen to apply the extended loss carryover *122 provision of section 172, and this conclusion cannot be avoided by pointing to petitioners' error in computing their actual loss by using the property's fair market value as of December 31, 1958, rather than its adjusted basis at the time it was expropriated. We find further support for this conclusion by comparing the particulars of petitioners' election with the ineffective language employed by the taxpayers in Octavio J. Valdes,supra,60 T.C. at 911. In Valdes, the taxpayers' purported election consisted entirely of the following statement: We are claiming Cuban Casualty Losses, Revenue Act 1964. Not only did they fail to include any reference to section 172 whatsoever, but by citing the Revenue Act of 1964 they created the likely impression that they were relying *123 upon section 238 of that Act which added section 165(i) to the Code, the only provision of the Code at that time which dealt specifically with Cuban expropriation losses. See p. , fn. 5. By contrast, the language employed by petitioners herein clearly directed the Commissioner's attention exclusively to the extended carryover provisions of section 172 without even an oblique reference to section 165(i). Finally, insofar as the regulations required petitioners to include in their election a statement of their foreign expropriation loss for the taxable year and a schedule showing its computation, petitioners have done so. To be sure, in their attempt to fulfill this aspect of the election they miscalculated the amount of loss which they originally had sustained. But it would be unreasonable to construe the regulation as predicating the validity of a taxpayer's election upon the Commissioner's later agreement with the amount of the taxpayer's claimed loss, a matter which in the case of a foreign expropriation may be expected to involve a considerable degree of estimation, if not plain guesswork. We hold that by their statement attached to their 1964 income tax return, petitioners *124 fulfilled the essential requirements of section 172(b)(3)(C)(iii) of the Code and section 1.172-11(c)(3) of the Regulations; they are therefore entitled to carry over the unused portions of their 1960 Cuban expropriation loss to the taxable years here in issue as provided in section 172(b)(1)(D). Decision will be entered for the petitioners.
Footnotes
1. SEC. 172. NET OPERATING LOSS DEDUCTION. * * * * *
(b) Net Operating Loss Carrybacks and Carryovers.-- (1) Years to which loss may be carried.-- * * * * *
(D) In the case of a taxpayer which has a foreign expropriation loss (as defined in subsection (k)) for any taxable year ending after December 31, 1958, the portion of the net operating loss for such year attributable to such foreign expropriation loss shall not be a net operating loss carryback to any taxable year preceding the taxable year of such loss and shall be a net operating loss carryover to each of the 10 taxable years following the taxable year of such loss (or, with respect to that portion of the net operating loss for such year attributable to a Cuban expropriation loss, to each of the 15 taxable years following the taxable year of such loss); * * * The material enclosed in parentheses relating to Cuban expropriation losses was added to these provisions on January 12, 1971 by section 2(a) of Pub. L. 91-677, 84 Stat. 2061. ↩
2. SEC. 172. NET OPERATING LOSS DEDUCTION. * * * * *
(k) Foreign Expropriation Loss Defined.--For purposes of subsection (b)-- (1) The term "foreign expropriation loss" means, for any taxable year, the sum of the losses sustained by reason of the expropriation, intervention, seizure, or similar taking of property by the government of any foreign country, any political subdivision thereof, or any agency or instrumentality of the foregoing. For purposes of the preceding sentence, a debt which becomes worthless shall, to the extent of any deduction allowed under section 166(a), be treated as a loss. * * * * *
(3) The term "Cuban expropriation loss" means, for any taxable year, a foreign expropriation loss sustained by reason of the expropriation, intervention, seizure, or similar taking of property, before January 1, 1964, by the government of Cuba, any political subdivision thereof, or any agency or instrumentality of the foregoing. The portion of a foreign expropriation loss for any taxable year attributable to a Cuban expropriation loss is the amount of the Cuban expropriation loss. Paragraph (3) was added to section 172(k)↩ on January 12, 1971, by section 2(c) of Pub. L. 91-677, 84 Stat. 2061. 3. In addition to the unavailability of any carryback in respect of foreign expropriation losses pursuant to section 172(b)(1)(D), the election affects the time for making or changing any choice or election relating to the foreign tax credit, as well as the period in which deficiencies may be assessed and the time for filing claims for refund. See section 172(b)(3)(D). Also, see section 172(b)(2)↩, relating to the separate treatment of foreign expropriation losses in computing the amount of carrybacks and carryovers from a loss year. 4. Sec. 1.172-11. Election with respect to portion of net operating loss attributable to foreign expropriation loss. * * * * *
(c) Time and manner of making election-- * * * (2) Taxable years ending after December 31, 1958 and before January 1, 1964. In the case of a taxpayer who has a foreign expropriation loss for a taxable year ending after December 31, 1958, and before January 1, 1964, the election referred to in paragraph (a) of this section shall be made by filing on or before December 31, 1965, with the district director for the district in which the taxpayer filed his income tax return for the taxable year of such foreign expropriation loss, a statement containing the information required in subparagraph (3) of this paragraph. Such election shall be irrevocable after December 31, 1965. See paragraph (d) of this section for special rules relating to taxable years affected by an election under this subparagraph. (3) Information required. The statement referred to in subparagraphs (1) and (2) of this paragraph shall contain the following information: (i) The name, address, and taxpayer account number of the taxpayer; (ii) A statement that the taxpayer elects under section 172(b)(3)(C)(ii) or (iii), whichever is applicable, to have section 172(b)(1)(D) of the Code apply; (iii) The amount of the net operating loss for the taxable year; and (iv) The amount of the foreign expropriation loss for the taxable year, including a schedule showing the computation of such foreign expropriation loss. In addition, if a taxpayer makes the election under subparagraph (2) of this paragraph, the taxpayer shall specify the internal revenue district in which eh filed his return for the three taxable years immediately preceding the taxable year of the foreign expropriation loss. If there is an increase or decrease in tax attributable to the election under subparagraph (2) of this paragraph for any taxable year preceding or succeeding the taxable year of the foreign expropriation loss, amended returns or claims for refund should be filed with the office of the district director with whom the taxpayer files his income tax return for the taxable year in which such election is made.↩
5. Section 165(i), which permits taxpayers to treat the loss of certain property confiscated by the government of Cuba as a deductible loss under section 165(c)(3), was cast in substantially its present form by section 3(a) of the Excise-Tax Rate Extension Act of 1964, Pub. L. 88-348, 78 Stat. 237. Section 172(k) was not amended to deal specifically with Cuban expropriation losses until 1971. See footnote 2, supra. This 1971 amendment, adding a definition of the term "Cuban expropriation loss", was obviously intended as a companion provision to the simultaneous addition of the parenthetical language in section 172(b)(1)(D), footnote 1, supra, which extended the 10-year carryover period for foreign expropriation losses to 15 years in the case of a Cuban expropriation loss. Prior to these 1971 amendments, the 10-year period was also applicable to Cuban expropriation losses, provided, of course, that the required election under section 172(b)(3)(C)(iii)↩ had been filed.
6. It is equally unreasonable for the Commissioner to impute this intent to petitioners on the basis of their reference to December 31, 1958, which date appears in section 165(i). Indeed, it is just as reasonable to assume that petitioners borrowed that date from section 172(b)(3)(C)(iii)↩, where it also appears and which would be consistent with the plain intent of their election.