FLORENTINO COBIAN and EULALIA COBIAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cobian v. Commissioner
Docket No. 3074-74
United States Tax Court
T.C. Memo 1976-207; 1976 Tax Ct. Memo LEXIS 195; 35 T.C.M. (CCH) 885; T.C.M. (RIA) 760207; June 28, 1976, Filed *195 Petitioner, Eulalia Cobian departed from Cuba and became a resident alien on August 31, 1961. Petitioner, Florentino Cobian left Cuba for Spain on March 25, 1963 and established residence in the United States in February, 1964. Cuban law provided that unless he returned to Cuba within 90 days, he would be considered to have abandoned his property. Held: Since Florentino Cobian was a nonresident alien at the time any loss he might have incurred was sustained, he is entitled to no deduction therefor. Sec. 873(a), I.R.C. 1954. Heldfurther: Since any loss incurred by Eulalia Cobian was sustained in 1961 she is not entitled to net operating loss carryover deductions for any year later than 1966. Held further: Petitioners have failed to establish that they owned the properties that they allege were nationalized by the Cuban government. Richard J. Walsh, for the petitioners. Carolyn J. Chabora, for the respondent. STERRETT
MEMORANDUM FINDINGS OF *197 FACT AND OPINION STERRETT, Judge: Respondent determined deficiencies in petitioners' federal income taxes as follows: Year
Amount
1967
$1,698.12
1968
2,109.87
1969
2,302.83
1970
3,650.69
The issues for decision are whether petitioners are entitled to net operating loss carryover deductions for the years 1967, 1968, 1969 and 1970 for the loss of the value of property confiscated by the Cuban government, and whether petitioners have substantiated payment for certain medical expenses and taxes so as to entitle them to deductions therefor for the year 1970. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners, Florentino Cobian (hereinafter Florentino) and Eulalia Cobian (hereinafter Eulalia), husband and wife since 1940, were residents of Cedar Grove, New Jersey at the time they filed their petition herein. Petitioners filed joint federal income tax returns for the calendar years 1967, 1968, 1969 and 1970 with the district director of internal revenue, Newark, New Jersey. Petitioners were *198 Cuban nationals residing in Havana, Cuba prior to their respective departures therefrom following the assumption of power by the Castro regime. Eulalia departed from Cuba on August 31, 1961 pursuant to a passport issued July 14, 1960 and arrived in Miami, Florida on the same day. On August 31, 1961 Eulalia acquired the status of a resident alien for United States tax purposes. Florentino left Cuba for Spain on March 25, 1963 pursuant to a visa, issued May 18, 1962, the terms of which required him to return to Cuba within 90 days. On February 29, 1964 he arrived, and established residence, in the United States. Once in the United States petitioners had no intention of returning to Cuba absent a change in the political climate in the latter country. On September 29, 1961, the Cuban Government issued Resolution 454, which was later published in the official government newspaper on October 9, 1961. Such resolution stated in part (as translated): I RESOLVE: FIRST: That citizens leaving the national territory for the United States of North America will be granted a permit for up to twenty-nine days; sixty days for travellers going to the other Countries of the American Continent; *199 and ninety days for those who travel to the European Continent. If they should not return at the expiration of the permits, it shall be considered that they definitively abandoned the national territory and as a result the State shall proceed to appropriate personal property, real estate and any holdings belonging to said person. On December 5, 1961, the Cuban Government issued law 989, which was published in the official government newspaper on December 6, 1961. As translated this law stated in pertinent part: Article 1.--*** If the return does not occur within the period of time for which the departure was authorized it will be considered that there has been a final abandonment of the country. Article 2.--In the case of the persons covered by the second paragraph of Article 1, all personal property, real property, or any other property, rights or securities of any kind, belonging to them, shall be deemed nationalized pursuant to confiscation in favor of the Cuban State, and the property shall be assigned to the corresponding Government bureau. * * *
Article 4.--Motorized vehicles, regardless of their category, which are referred to in the preceding article, shall *200 be seized by the Ministry of the Interior and be transferred to the appropriate public organism. * * *
Final Provision.--All legal provisions and regulations which are in opposition to the provisions of this law are hereby repealed and the law shall take effect on the date of its publication in the Official Gazette of the Republic. On their joint federal income tax return for 1965 petitioners claimed a net operating loss carryover deduction for the value of property which they alleged had been confiscated by the Cuban government in the amount of $6,840. Respondent disallowed this deduction and petitioners failed to contest the disallowance. On their returns for the calendar years 1967, 1968, 1969 and 1970 petitioners claimed further net operating loss carryover deductions with respect to their Cuban losses. [1] Respondent disallowed these deductions as follows: It is determined that the deductions claimed for Cuban Loss Carryovers are not allowed since you failed to establish 1. The date of the loss. 2. Type of property seized or confiscated. 3. Cost basis of the property. 4. That you were a resident or citizen of the United States at the time of the loss. *201 Respondent also disallowed deductions claimed by petitioners on their 1970 return for taxes and medical expenses for lack of substantiation. OPINION We sustain respondent's disallowance of the deductions claimed by petitioners for the value of their property allegedly confiscated by the Cuban government. Through the testimony offered on behalf of petitioners, they painted a portrait of their lives in Cuba in Panglossian terms. Their story is that of a poor family attaining considerable wealth through hard work and dedication. Unfortunately for petitioners, although their tale could easily constitute a chapter in a text on the Protestant ethic, it is one we are unable to accept. Upon our evaluation of the entire record and the credibility of the witnesses who appeared before us, we are unable to find as a fact that petitioners actually owned the properties upon which they stake their claim. Furthermore, assuming petitioners did own the properties *202 alleged to have been confiscated, they are nonetheless entitled to no deductions with respect thereto. Under applicable Cuban law as set forth in our findings of fact, it is clear that any interest Florentino had in any of the properties was confiscated when he failed to return to Cuba within 90 days. Since he was then living in Spain and was, hence, a nonresident alien for United States tax purposes at that time, a deduction for any loss he might have sustained must be denied. Section 873(a), I.R.C. 1954. [2]Cayetano R. Ribas, 54 T.C. 1347 (1970). Under applicable Cuban law it is also clear that any proprietary interests held *203 by Eulalia were confiscated during 1961. Hence, since she filed no election pursuant to section 172(b) (3) (c) thereby rendering the 10 year carryforward rule of section 172(b) (1) (D) inapplicable, the last year to which she could carry any loss was 1966. Sec. 172(b) (1) (B). Octavio J. Valdes, 60 T.C. 910 (1973). Petitioners submitted no evidence whatsoever with respect to their claimed deductions for property and real estate taxes and respondent's disallowance of these items is hereby sustained. Welch v. Helvering, 290 U.S. 111 (1933). Petitioners did substantiate certain payments for medical expenses at trial. However, the total amount substantiated did not exceed 3 percent of petitioners' adjusted gross income for 1970 and they are therefore entitled to no deduction for medical expenses for that year. Sec. 213(a) (1). Decision will be entered for the Respondent.
Footnotes
1. On their return for 1965 petitioners claimed that the total amount of the net operating loss carryover from 1964 was $29,682.84. The total amount of the net operating loss carryover shown on their 1967 return was $183,283.↩
2. SEC. 873. DEDUCTIONS. (a) General Rule.--In the case of a nonresident alien individual, the deductions shall be allowed only for purposes of section 871 (b) and (except as provided by subsection (b) only if and to the extent that they are connected with income which is effectively connected with the conduct of a trade or business within the United States; and the proper apportionment and allocation of the deductions for this purpose shall be determined as provided in regulations prescribed by the Secretary or his delegate.↩