EVELIO GARCIA-CARRERAS AND ESTATE OF JOSEFINA GARCIA-CARRERAS, Deceased, EVELIO GARCIA-CARRERAS, TEMPORARY ADMINISTRATOR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Garcia-Carreras v. Commissioner
Docket No. 1971-76.
United States Tax Court
T.C. Memo 1977-425; 1977 Tax Ct. Memo LEXIS 14; 36 T.C.M. (CCH) 1738; T.C.M. (RIA) 770425; December 19, 1977, Filed; As Amended December 19, 1977 Thomas P. Burke, for the petitioners. Edward P. Phillips, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined the following deficiencies in petitioners' Federal income taxes: Year
Deficiency
Additions to Tax, sec. 6651(a)(1), I.R.C. 1954
1968
$ 1,626.89
-
1969
1,188.23
-
1970
853.04
-
1971
1,505.84
-
1972
1,329.27
230.79
1973
2,776.00
505.10
The sole issue for our decision is whether petitioners are entitled to carry forward, to the years in question, a Cuban expropriation loss sustained in the year 1961. The answer depends entirely upon whether petitioners timely filed the election to carry forward expropriation losses required by section 172(b)(3)(C)(iii), I.R.C. 1954, and section 1.172-11, Income Tax Regs.
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, and accompanying exhibits, are incorporated herein by this reference. Petitioner Evelio Garcia-Carreras was a resident of Georgia in March 1976, *17 when the petition in this case was filed. Evelio Garcia-Carreras was married to Josefina Garcia-Carreras at all times from 1958 until her death in 1975, and they filed joint Federal income tax returns for the years 1959-1973, inclusive. [1] Subsequent to Josefina's death, Evelio was duly appointed administrator of his wife's estate, and he appears herein both for himself and as the representative of his wife's estate. For convenience, Evelio Garcia-Carreras will hereinafter be referred to as the petitioner, while Evelio and Josefina will be referred to as "petitioners". Petitioner and his wife were citizens and residents of Cuba until 1957. On or about August 26, 1957, petitioner left Cuba and entered the United States, becoming a permanent resident of the United States by 1958 and a citizen of the United States on January 30, 1963. Petitioner and his wife owned property in and around Havana, Cuba, which had a fair market value of $200,000 in United States currency during 1960 through 1962. Petitioners' adjusted basis in this property during *18 1960 through 1962 was at least $200,000. This property was confiscated by the Cuban government during 1961 in accordance with Cuban Law Number 989 and the rules thereunder. [2] Petitioners thereby suffered a Cuban expropriation loss in the amount of $200,000. On their 1962 joint Federal income tax return, petitioners made the following statement: BUSINESS BAD DEBTS
Taxpayer has been a permanent resident of the United States since 1958 and in 1963 became a U.S. Citizen. He owned 2 apartment houses in Havana, Cuba. In 1960 the Cuban Government took over all rental property and promised the owners 15 years annual rent. In December 1961, the Cuban Government declared a policy that all owners of property in Cuba who had *19 been out of Cuba for more than 30 days would have no claims against the Cuban Government. Taxpayer claims a business bad debt from the loss of the 2 apartment houses. * * *
Total Business Bad Debts $214,968.00 The Above are considered Bad Debts as of December 1961 when the Cuban Government refused to honor any claims by owners out of the country more than 30 days. Loss Carried Back to 1958 Return
$ 5,000.00
Loss Carried back to 1959 Return
1,944.64
Loss Carried back to 1960 Return
3,800.91
Loss Used on 1961 Return
1,174.66
Loss Used on 1962 Return
5,974.29
$ 17,894.50
Carried Forward
197,073.50
Business Bad Debt Total
$214,968.00
Petitioners' joint Federal income tax returns for the years 1959, 1960 and 1961 showed adjusted gross income of $1,598.75, $3,800.91, and ($222.10), respectively. Each of the three returns showed that no tax was due and claimed a refund of all taxes withheld by petitioners' employers. No mention was made on any of the three returns of a Cuban expropriation loss. Petitioners' joint Federal income tax return for 1963 contained a statement substantially identical to that quoted above from their 1962 return. Petitioners' *20 joint Federal income tax return for 1964 contained the following statement: Taxpayer has been a permanent resident of the United States since 1958 and in 1963 became a U.S. Citizen. He owned two apartment houses in Havana, Cuba. In 1960 the Cuban Government took over all rental property. In December, 1961, the Cuban Government declared a policy that all owners of property in Cuba who had been out of Cuba for more than 30 days would have no claims against the Cuban Government. Taxpayer claims a net operating loss as follows: Total net operating loss
$350,857.92
Loss Carried back to 1958 Return
$ 5,000.00
Loss Carried back to 1959 Return
1,944.64
Loss Carried back to 1960 Return
3,800.91
Loss Used on 1961 Return
1,174.66
Loss Used on 1962 Return
5,974.29
Loss Used on 1963 Return
5,310.10
Loss Used on 1964 Return
5,830.55
$ 29,035.15
Unused net operating loss carry-
over to Succeeding years
$321,822.77
Petitioners' returns for 1965, 1966 and 1967 contained statements substantially identical to that contained in their 1964 return. Petitioners' returns for 1968 and 1969 contained a statement that petitioners had sustained a net operating *21 loss of $350,857.92, showed the amount of the loss "used" in each of the years 1958 through 1968 and 1969, respectively, and concluded that $285,383.43 was available for carryover to 1969 and $273,643.56 was available for carryover to 1970. Petitioners' returns for 1970 and 1971 contained a statement in the following form: [3]
Net operating loss
350,858
Less losses utilized 1958 to 1969
(77,214)
1970 Carry Over Loss
273,644
Their returns for 1972 and 1973 contained statements in virtually the same form, except that the phrase "Loss utilized under 15 year carry forward provision of Code" was substituted for the phrase "Losses utilized 1958 to 1969". Petitioners did not file with the Internal Revenue Service a statement containing the information set forth in the Treasury Regulations under section 172(b)(3)(C) and (D), Internal Revenue Code of 1954, regarding the election solely to carry forward, and not carry back, claimed Cuban confiscation losses. The only claimed election *22 made by petitioners solely to carry forward, and not carry back, claimed Cuban confiscation losses was made in their joint Federal income tax returns for 1959 through 1973. In each of the years 1962 through 1973, inclusive, petitioners claimed net operating losses based upon the expropriation of their Cuban property in 1961 in amounts sufficient to offset their entire tax liability. The Commissioner, in his notice of deficiency covering the years 1968 through 1973, inclusive, disallowed the claimed net operating loss deductions and asserted deficiencies in tax in each of the six years. [4]
OPINION Petitioner and his wife incurred Cuban expropriation losses in 1961 when the Cuban government seized their property in and around Havana pursuant to Cuban Law Number 989. The Commissioner has stipulated that the seized property had a fair market value at the time of seizure of $200,000, and a basis in petitioners' hands at *23 that time of at least $200,000. The narrow issue presented for our decision is whether petitioner and his wife filed the election required by section 172(b)(3)(C)(iii), I.R.C. 1954, and section 1.172-11, Income Tax Regs. If they did, then the Commissioner concedes that they are entitled to the net operating loss deductions claimed herein. [5] See sections 172(b)(1)(D), 172(b)(3)(C)(iii). If they did not file such election, they are entitled only to a five-year carryforward (in addition to a three-year carry-back), see section 172(b)(1)(A) and (B), and this carryforward privilege expired prior to 1968. Section 172(a), I.R.C. 1954, allows a deduction in any taxable year for the aggregate of the net operating loss carryovers to such year and the net operating loss *24 carrybacks to such year. Under the general rule of section 172(b)(1)(A) and (B), a net operating loss incurred in one taxable year may be carried back to the three preceding taxable years and then may be carried forward to each of the five succeeding taxable years. In the special case of Cuban expropriation losses, however, section 172(b)(1)(D) makes the following provision: [6]
SEC. 172. NET OPERATING LOSS DEDUCTION. * * *
(b) Net Operating Loss Carrybacks and Carryovers.-- (1) Years to Which Loss May Be Carried.-- * * *
(D) In the case of a taxpayer which has a foreign expropriation loss (as defined in subsection (k)) for any taxable year ending after December 31, 1958, the portion of the net operating loss for such year attributable to such foreign expropriation loss shall not be a net operating loss carry-back to any taxable year preceding the taxable year of such loss and shall be a net operating loss carryover to each of the 10 taxable years following the taxable year of such loss (or, with respect to that portion of the net operating loss for such year attributable to a Cuban expropriation loss, to each of the 15 taxable years following the taxable year of *25 such loss) * * *. In order to obtain the special loss carryforward provided by section 172(b)(1)(D), however, a taxpayer must comply with the special rule of section 172(b)(3)(C), which requires in pertinent part: (iii) in the case of a foreign expropriation loss for a taxable year ending after December 31, 1958, and before January 1, 1964, the taxpayer elects (in such manner as the Secretary or his delegate by regulations prescribes) on or before December 31, 1965, to have paragraph (1)(D) apply. The accompanying regulations [7] require an electing taxpayer to file a statement of election, the principal features of which are: (1) information identifying the taxpayer; (2) a statement that he elects to have section 172(b)(1)(D) *26 apply; (3) the amount of the net operating loss for the year; and (4) a schedule showing the computation of the foreign expropriation loss. In the case of taxpayers who sustained losses during taxable years after 1958 and before 1964, the election must be filed prior to December 31, 1965, and is irrevocable thereafter. *27 Petitioner has stipulated that neither he nor his wife ever filed an election in the form required by the Commissioner's regulations. He argues, however, that the information contained in their joint Federal income tax returns for the years 1959 through 1973 constitutes such an election and substantially complies with the regulatory requirements. In Valdes v. Commissioner,60 T.C. 910, this Court had occasion to determine what constitutes substantial compliance with the Commissioner's regulations regarding the section 172(b)(3)(C) election. As we there noted, the election has consequences other than the extension of the loss carryover from five to fifteen years, and extends to the electing taxpayer both benefits and burdens. See Valdes v. Commissioner,supra,60 T.C. at 914. [8] We concluded that: These detailed statutory provisions on the consequences flowing from an election of the extended carryover provisions of section 172(b)(1)(D) serve to emphasize the importance of having an unequivocal statement from the taxpayer if he chooses to elect to have that section apply. That Congress fixed a deadline of December 31, 1965, for making the *28 election suggests that a taxpayer was not to be allowed to file an ambiguous statement which would permit him to wait and see whether the benefits would outweigh the burdens of the election in his individual case. Rather, as a minimum, the taxpayer is required to definitely commit himself * * *. 60 T.C. at 915. On the basis of the returns in evidence before us, we can find no such unequivocal statement that petitioners elected to have the burdens and the benefits of the section 172(b)(1)(D) extended loss carryover. Indeed, the returns for the years 1962 through 1971 indicate exactly the contrary. In their return for 1962, when *29 they first claimed a deduction for their Cuban expropriation losses, petitioners explicitly stated that they were carrying back the loss from 1961, the year in which it was incurred, to the three preceding taxable years, 1958, 1959 and 1960. Their returns for each of the years 1963 through 1971, inclusive, show that the 1961 expropriation loss was first carried back to the three preceding taxable years. It is true, of course, that in their returns for 1972 and 1973 petitioners explicitly relied upon the 15-year carryforward provision to justify their claimed net operating loss deductions. And it is also true that, starting in 1967, their claims for net operating loss deductions based upon their 1961 Cuban expropriation losses could only have been justified by section 172(b)(1)(D), because the regular five-year carryforward period provided by section 172(b)(1)(B) had already expired. But neither their 1967 return nor any later return can possibly constitute the election required by section 172(b)(3)(C)(iii), for the simple reason that they were not filed with the Commissioner on or before December 31, 1965. The only documents filed before that date, namely petitioners' returns *30 for years prior to 1965, indicate no intention to claim the special 15-year loss carryover. Rather, they strongly indicate an intent to use the normal three-year loss carryback and five-year carryforward. Petitioner argues that he should be entitled to the benefits of the 15-year loss carryforward because the three-year carryback produced no tax benefit, and because his failure to file the required election resulted from no fault of his own. In support of this argument petitioner notes that his returns for 1959, 1960 and 1961 showed no tax due, even before the application of any net operating loss carryback. Petitioner has not, however, produced his 1958 return, so we cannot determine what, if any, tax liability might have been shown thereon. And of course, the Commissioner was not obliged to accept petitioner's tax returns as filed. Furthermore, as we said in Garrido v. Commissioner,32 T.C.M. 688, 690, "[that] [petitioner] may have erroneously, and to his detriment, relied upon the advice and guidance of an attorney cannot salvage his position under the circumstances of this case." The same is true of petitioner's reliance on a tax return preparer and accountant. *31 Inasmuch as the years in issue are more than five years after the year in which petitioners suffered their Cuban expropriation losses, Decision will be entered for the respondent. Footnotes
1. It appears that Evelio and Josefina may have filed a joint return for 1958, but such return has not been placed in evidence.↩
2. Cuban Law No. 989 provides in part as follows: In the case of persons [who do not return to Cuba within the period of time for which departure from the country was authorized] all personal property, real property, or any other property, rights or securities of any kind, belonging to them, shall be deemed nationalized pursuant to confiscation in favor of the Cuban State, and the property shall be assigned to the corresponding Government bureau.↩
3. The figures shown are from the 1970 return. The 1971 return showed that the loss utilized through 1970 was ($82,330) and that the carryover available from 1971 was $268,528.↩
4. In addition to disallowing the claimed net operating losses, the Commissioner made certain other adjustments which are no longer in issue, or which depend solely upon mathematical adjustments required if petitioners' adjusted gross income is increased.↩
5. The Commissioner has not suggested that petitioners' losses were anything other than business losses deductible under section 165(a) and therefore subject to the net operating loss deduction provided by section 172(a)↩. Nor has the Commissioner alleged that the loss carryover had been exhausted by petitioners in the years prior to 1968, or would be exhausted by petitioners' taxable income for the years in issue.
6. The special carryforward for expropriation losses was added to section 172(b)(1)↩ by section 210(a)(3), Pub. L. 88-272, 78 Stat. 47. The special treatment of Cuban losses was added by section 2(a), Pub. L. 91-677, 84 Stat. 2061, effective for taxable years ending after December 31, 1958. Effective October 4, 1976, the 15 year carryforward for Cuban expropriation losses has been extended to 20 years. Section 2126, Pub. L. 94-455, 90 Stat. 1920.
7. Section 1.172-11(c) provides, in pertinent part: (c) Time and manner of making election--* * *. (2) Taxable years ending after December 31, 1958 and before January 1, 1964. In the case of a taxpayer who has a foreign expropriation loss for a taxable year ending after December 31, 1958, and before January 1, 1964, the election referred to in paragraph (a) of this section shall be made by filing on or before December 31, 1965, with the district director for the district in which the taxpayer filed his income tax return for the taxable year of such foreign expropriation loss, a statement containing the information required in subparagraph (3) of this paragraph. Such election shall be irrevocable after December 31, 1965. See paragraph (d) of this section for special rules relating to taxable years affected by an election under this subparagraph. (3) Information required. The statement referred to in subparagraphs (1) and (2) of this paragraph shall contain the following information: (i) The name, address, and taxpayer account number of the taxpayer; (ii) A statement that the taxpayer elects under section 172(b)(3)(C)(ii) or (iii), whichever is applicable, to have section 172(b)(1)(D) of the Code apply; (iii) The amount of the net operating loss for the taxable year; and (iv) The amount of the foreign expropriation loss for the taxable year, including a schedule showing the computation of such foreign expropriation loss. In addition, if a taxpayer makes the election under subparagraph (2) of this paragraph, the taxpayer shall specify the internal revenue district in which he filed his return for the three taxable years immediately preceding the taxable year of the foreign expropriation loss. If there is an increase or decrease in tax attributable to the election under subparagraph (2) of this paragraph for any taxable year preceding or succeeding the taxable year of the foreign expropriation loss, amended returns or claims for refund should be filed with the office of the district director with whom the taxpayer files his income tax return for the taxable year in which such election is made.↩
8. In addition to the unavailability of any carryback in respect of foreign expropriation losses pursuant to section 172(b)(1)(D), the election affects the time for making or changing any choice or election relating to the foreign tax credit, as well as the period in which deficiencies may be assessed and the time for filing claims for refund. See section 172(b)(3)(D). Also, see section 172(b)(2)↩, relating to the separate treatment of foreign expropriation losses in computing the amount of carrybacks and carryovers from a loss year.