56 So.2d 685

DWIGHT MFG. CO. v. LONG.

7 Div. 170.

Court of Appeals of Alabama.

Jan. 29, 1952.

388

Lusk, Swann & Burns, Gadsden, for appellant.

Hawkins & Copeland, Gadsden, for appellee.

J. Eugene Foster and O. J. Goodwyn, Montgomery, for Department of Industrial Relations.

CARR, Presiding Judge.

This appeal is from a judgment in the circuit court awarding a claim for payments of unemployment compensation allegedly due under the law in this State.

The only question of critical concern is whether or not claimant voluntarily left his job without good cause connected with his employment.

The pertinent parts of the applicable statute are:

"An individual shall be disqualified for benefits for total or partial unemployment:— * * *

"B. If he has left his work voluntarily without good cause connected with such work." Title 26, Sec. 214, Code 1940.

The facts in the case are without substantial dispute and will be set out compendiously.

The claimant cannot read nor write, even to the extent of being unable to recognize his own name when it is written.

For a number of years his main vocation had been firing boilers with coal as a fuel. For about five and one-half years just prior to and at the time of instant concern he had been and was engaged in this nature and character of employment for the Dwight Manufacturing Company.

It appears that the employer used two boilers for the purpose of generating steam power for the plant.

The circumstances which brought about the unemployment status were the fact that the fuel used to fire the boilers was changed from coal to gas and that this conversion necessitated the installation of an entirely different mechanical system. This was particularly true with reference to the matter of increasing and decreasing the heat; gauging the regulation of steam pressure;

and other requirements to assure needed power production.

Printed operating instructions were furnished, but the claimant was unable to read them and, of course, could not get any information from this source.

The attitude of the appellee to the situation which confronted him seems to be fairly disclosed in these excerpts from his testimony:

Q. But you never had operated a boiler with natural gas? A. No sir, that was the first one I ever seen in my life."

"Q. Well, when you came back the next day there was nothing but gas boilers? A. No sir, they put the gas on the boilers the next day, I was there from eleven to seven, and I asked Mr. Hoyt that night, I said I want to transfer up into the mill until you go back to coal, I says I am afraid of this stuff and I can't read this, I says I don't know what it would amount to, and furthermore than this I says if it blowed up, I says, and killed somebody, maybe get killed myself, I says if it killed somebody else I would feel like I was to black (sic) because I have got no education to read it.

"Q. Can you read? A. No sir, I can't read and write my own name."

It appears from the evidence that some effort was made to adjust the claimant's situation by affording him another job in the plant. This did not materialize. However the proof discloses that this failure was not due to appellee's refusal to take the new employment.

The words "voluntarily" and "involuntarily" are, of course, antonymous and are mere symbols of ideas.

An ostensibly voluntary confession may be found in fact to be involuntary when the circumstances under which it was declared are taken into account.

■ The mere fact that an employee wills to leave his job does not necessarily mean that the act is voluntary. Extraneous factors and surrounding conditions must be considered and when examined it may be determined that the seemingly voluntary act of leaving the job was in fact involuntary.

In other words, the circumstances may have compelled and controlled the decision.

■ The word "voluntarily" as it appears in the act must be taken in connection with the term "without good cause." We think that "good cause" in the law of instant concern connotes substantial reason; just ground for such action; adequate excuse that will bear the test of reason; and always the element of good faith.

■ A fair interpretation of the evidence in the case at bar leads to the inescapable conclusion that the claimant did have good cause for declining to remain at his job after the indicated changes were made in the character of employment.

The fear of his inability to operate the gas burning furnaces may have been based on a false premise, but unquestionably the fear existed. To the claimant it was real not imaginary, substantial not whimsical.

The distributors of natural gas are constantly warning against careless or unacquainted use of the appliances which furnish the heat power. The resultant effects of misuse are a matter of common knowledge.

Frankly, we are unable to understand why the employer would want the claimant to assume the responsibility of firing the gas heated boilers under the circumstances which the record evidence discloses.

Neither the case of Henderson v. Department of Industrial Relations 252 Ala. 239, 40 So.2d 629, nor Department of Industrial Relations v. Wall, 34 Ala.App. 530, 41 So. 2d 611, bears any factual analogy to the case at bar. This is clearly discernible by an examination of the opinions.

The judgment of the court below is ordered affirmed.

Affirmed.