**UNITED STATES of America,
Appellant,**

v.

**G. W. VAN KEPPEL and Elizabeth Van
Keppel, Appellees.**

**No. 7220.**

United States Court of Appeals
Tenth Circuit.
Aug. 26, 1963.

718

Harold C. Wilkenfeld, Atty., Dept. of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, and Stephen B. Wolfberg, Attys., Dept. of Justice, and Newell A. George, U. S. Atty., on the brief), for appellant.

Joseph H. McDowell, Kansas City, Kan., and Richard H. Brown, Kansas City, Mo. (John B. Gage, Albert F. Hillix, and Hillix, Hall, Hasburgh, Brown & Hoffhaus, Kansas City, Mo., on the brief), for appellees.

Before BRATTON, LEWIS and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This controversy relates to the taxability of proceeds from the redemption of corporate stock as ordinary income or as a capital gain. The trial court upheld the taxpayers' contention that the transaction represented a capital gain. The government, asserting that the amount of gain received was ordinary income, has appealed.

The appellees-taxpayers are husband and wife and reside in Kansas. The husband was in the business of selling, leasing, and servicing road-construction machinery and equipment. In 1945 the husband sold his business to a Missouri corporation, The G. W. Van Keppel Company, hereinafter referred to as Company. The authorized stock of the Company was 2,000 no par value shares. The Company began business with a total capital of $15,000 derived from the issuance of stock at $10 per share to the husband in the amount of 1,124 shares, to the wife in the amount of 375 shares, and one share to a third-party. The wife paid $3,750 for the stock issued to her, the amount coming from her own funds previously given to her by her husband.

The Company prospered. From time to time stock was issued at book value to various officers and employees out of the holdings of the husband. When an officer or employee owning Company stock left the employment of the Company, he sold his stock back at book value.

The wife retained all her 375 shares until November 29, 1956, when she surrendered them to the Company for $337,-500, paid to her by the Company.[1] The motivation for the transaction came from the wife who disapproved of the expansion of Company operations. This redemption of the wife's stock was approved separately by appropriate actions of the board of directors and of the shareholders. The stock was retired and the number of authorized shares reduced by 375. The redeemed stock represented the entire holdings and financial interest of the wife in the Company and, since the redemption, she has not acquired any stock or interest of any kind in the Company and has not served as a Company officer, director, employee, or agent.

The taxpayers' joint return for the tax year 1956 showed the proceeds from the stock redemption as a long-term capital gain. The return was filed on February 18, 1957. A total tax of $118,017.04 was due and paid.

Sections 301–346 of the Internal Revenue Code of 1954[2] cover corporate distributions and adjustments. Property received in redemption of stock[3] is taxed

---

1. The payment was $900 per share, the approximate book value.

2. 26 U.S.C. §§ 301–346.

3. Section 317(b) says that stock shall be treated as redeemed if the corporation acquires its stock from a shareholder in exchange for property.

as a capital gain under § 302(a) if the redemption qualifies under § 302(b); otherwise the distribution is taxable as a dividend under § 301. Section 302(b) (3) permits capital gain treatment of a distribution "in complete redemption of all of the stock of the corporation owned by the shareholder."

Section 318(a) relates to constructive ownership of stock and says in its subsection (a) (1) (A) (i) that an individual shall be considered as owning the stock owned by his spouse. This section is specifically made applicable to the determination of stock ownership for the purposes of § 302,[4] except that in the case of a complete redemption of all of the stock owned by a shareholder no attribution of ownership occurs if three conditions are met. One of these [5] requires the distributee "at such time and in such manner as the Secretary or his delegate by regulations prescribes" to file an agreement to notify the Secretary or his delegate of any acquisition of an interest in the corporation within a 10-year period and to retain certain records. If the agreement is filed, the periods of limitation provided in §§ 6501 and 6502 [6] are extended for one year following the notice to the Secretary.

Section 1.302–4(a), Treasury Regulations on Income Tax (1954 Code), provides in part:

"* * * the agreement specified in section 302(c) (2) (A) (iii) shall be in the form of a separate statement in duplicate signed by the distributee and attached to his return timely filed for the year in which the distribution described in section 302 (b) (3) occurs."

The transaction between the wife and the Company did not concern the husband's stock, all of which was retained by him. Because of the attribution of own-

ership provisions the wife may not take advantage of § 302(b) (3) pertaining to complete divestiture unless the agreement required by § 302(c) (2) (A) (iii) is filed. Prior to the filing of the return the taxpayers submitted their records to a certified public accountant, who prepared the return, and consulted their lawyers. Through the inadvertence of someone, no agreement was attached to the return.[7]

In July, 1958, the Internal Revenue Service undertook an audit of the taxpayers' return and learned of the transaction. The Director then notified the taxpayers that they had failed to file the required agreement. On July 16, 1958,[8] the lawyers for the taxpayers forwarded the agreement to the Director of Internal Revenue at Wichita, Kansas. The Director did not reject the agreement and, so far as the record shows, accepted the agreement for filing.

On October 15, 1958, the taxpayers filed an amended joint income tax return for 1956, to which a copy of the agreement was attached. The Director duly acknowledged receipt of the amended return. That return reported a tax liability of $32.38 less than the amount shown on the original return and requested a refund of such overpayment. The refund was not made and the taxpayers brought suit to recover. The Director then determined that the proceeds from the redemption were taxable as a dividend and assessed a deficiency for 1956 in the amount of $213,357.13. The government counterclaimed for the deficiency. The case was tried on stipulations of facts, uncontroverted exhibits, and depositions. The trial court allowed recovery of the overpayment and denied the counterclaim on the ground that the pertinent regulation was directory and had been satisfied by substantial compliance. The govern-

---

4. See § 302(c) (1).

5. Section 302(c) (2) (A) (iii).

6. These relate to limitations on the assessment and collection of tax.

7. The finding of the trial court that the failure to file the agreement with the

original return was an "inadvertence" is not attacked by the government.

8. The action was taken well within the period of limitation prescribed by § 6501 (a) for assessment and collection of tax.

ment does not here contest the right to the refund.

■ The statute empowers the Secretary to fix by regulation the time when the agreement must be filed. The regulation requires that the agreement accompany a "return timely filed." The regulation is reasonable and assures compliance with the statutory scheme. The taxpayers have no absolute right to file the agreement after the period has expired for the filing of the return covering the year in which the distribution occurred. Otherwise, the taxpayers could gamble on the probability of an audit of the return within the period fixed by § 6501.[9]

Nothing in the statutes or regulations precludes the Director from accepting an agreement filed after the prescribed period. Established administrative practice has long recognized and accepted amended returns filed after the due date "for the purpose of correcting clear errors or plain mistakes inhering in original returns." See Klinghamer v. Brodrick, 10 Cir., 242 F.2d 563, 564. In J. E. Riley Investment Co. v. Commissioner of Internal Revenue, 311 U.S. 55, 58, 61 S. Ct. 95, 97, 85 L.Ed. 36, the Supreme Court referred to the liberality of the Treasury in accepting amended returns, even though filed after the period for filing original returns when the amendment was "designed merely to correct errors and miscalculations in the original return."

Although both the Klinghamer and Riley cases sustained the rejection of an amended return, those cases dealt with a change of election. Here we have a mistake—not a change of election. The interests of the government have not been jeopardized.[10] The Commissioner has been neither misled nor inconvenienced. Had the mistake not been made, the taxpayers would have been entitled to have the transaction treated as a capital gain.

The Director did not reject the agreement or the amended return. Unless the assessment of the deficiency may be considered a rejection, the government has never disclaimed the agreement and the taxpayers are bound by it. The situation is different from that presented in Archbold v. United States, D.C., 201 F.Supp. 329, affirmed per curiam on reasoning of the district court, 3 Cir., 311 F. 2d 228. That case did not consider a claim of mistake. After the Director had made a deficiency assessment on the basis that a redemption was ordinary income, the taxpayers offered to file an amended return appending the required agreement. Here the failure of the taxpayers to file the agreement was a mistake, the submission of the agreement preceded the assessment, and the record does not disclose any rejection of the agreement other than the deficiency assessment.

■■ In the circumstances we are reluctant to believe that the mistake was irrevocable.[11] Acceptance of the late filing was discretionary. Fairness to the taxpayers requires that the discretion be exercised for their benefit and failure to do so was an abuse of discretion. This disposition of the case makes it unnecessary to consider the other issues which have been argued.

Affirmed.

9. The taxpayers could await an audit and if the audit is made within the period of limitation, file the agreement, or, if the audit is not made within the limitation period, claim the benefit of the limitation. See Archbold v. United States, D.C., 201 F.Supp. 329, 332, affirmed on reasoning of the district court, 3 Cir., 311 F.2d 228.

10. Cf. Miller v. Commissioner of Internal Revenue, 5 Cir., 237 F.2d 830, 835.

11. Cf. Patent Royalties Corporation v. Commissioner of Internal Revenue, 2 Cir., 65 F.2d 580, 581.