BELL FIBRE PRODUCTS CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9314-72.    Filed January 19, 1976.

*Robert E. Johnson* and *William H. Krieg,* for the petitioner.
*Thomas J. Meyer,* for the respondent.

OPINION

Sections 38 and 46 to 50 provide a direct credit against a taxpayer's income tax, computed with reference to a specified percentage of the cost of, or basis in, certain qualified depreciable property, referred to as section 38 property, purchased and placed in service during the taxable year. The applicable percentage depends upon the useful life of the qualifying property. Where a credit has been allowed for such property and it is "disposed of, or otherwise ceases to be section 38 property with respect to the taxpayer" prior to the expiration of the useful life utilized to compute the credit, section 47(a)(1)[2] imposes a "recapture" tax in the year of the disposition.

Section 47(a)(1) has been interpreted to impose the recapture tax on a small business corporation which has section 38 property on hand when it elects, under section 1372, to take subchapter S status, sec. 1.47-4(b), Income Tax Regs.; *Tri-City Dr. Pepper Bottling Co.,* 61 T.C. 508 (1974). Liability for the tax arises in the taxable period immediately preceding the effective date of the election. The regulations, however, permit an electing cor-

---

[2] Sec. 47(a)(1) provides as follows:

(1) EARLY DISPOSITION, ETC.—If during any taxable year any property is disposed of, or otherwise ceases to be section 38 property with respect to the taxpayer, before the close of the useful life which was taken into account in computing the credit under section 38, then the tax under this chapter for such taxable year shall be increased by an amount equal to the aggregate decrease in the credits allowed under section 38 for all prior taxable years which would have resulted solely from substituting, in determining qualified investment, for such useful life the period beginning with the time such property was placed in service by the taxpayer and ending with the time such property ceased to be section 38 property.

poration and its shareholders to avoid the imposition of the tax in that year by agreeing to assume liability for any recapture tax which may arise if any of the corporation's section 38 property acquired prior to the election is disposed of or otherwise ceases to be section 38 property while the election is effective. The issue here presented is whether the agreement executed by petitioner and its shareholders effectively relieved petitioner of a recapture tax in its taxable period July 1 to December 31, 1968, the period immediately preceding the effective date of petitioner's subchapter S election.

Respondent relies upon section 1.47-4(b)(1), Income Tax Regs., which is as follows:

(1) *General rule.* If a corporation makes a valid election under section 1372 to be an electing small business corporation (as defined in section 1371(b)), then on the last day of the taxable year immediately preceding the first taxable year for which such election is effective, any section 38 property the basis (or cost) of which was taken into account in computing the corporation's qualified investment in taxable years prior to the first taxable year for which the election is effective (and which has not been disposed of or otherwise ceased to be section 38 property with respect to the corporation prior to such last day) shall be considered as having ceased to be section 38 property with respect to such corporation and sec. 1.47-1 shall apply. However, if the corporation and each of the persons who are shareholders of the corporation on the first day of the first taxable year for which the election under section 1372 is to be effective, or on the date of such election, whichever is later, execute the agreement specified in subparagraph (2) of this paragraph, sec. 1.47-1 shall not apply to any such section 38 property by reason of the election by the corporation under section 1372.

Respondent maintains that, because the agreement delivered to Romine by petitioner pursuant to the last sentence of this regulation was not timely filed, it did not relieve petitioner of the recapture tax.

In response, petitioner makes three arguments: (1) That the foregoing regulation is invalid; (2) that this Court erred in permitting respondent to amend its answer to allege liability for the recapture tax; and (3) that the agreement sent to the District Director by petitioner and its shareholders pursuant to section 1.47-4(b)(2)(ii), Income Tax Regs., relieves petitioner of liability for the recapture tax.

We think petitioner's first argument lacks merit. In *Tri-City Dr. Pepper Bottling Co., supra,* this Court carefully examined the language of section 47(a)(1), related provisions of the Code, and

the pertinent legislative history and upheld the validity of section 1.47-4(b)(1), Income Tax Regs. We concluded in that case that the regulation, which provides that a subchapter S election triggers the recapture tax, is reasonable. We shall adhere to that conclusion.

Similarly, we reject petitioner's second argument. After a lengthy evidentiary hearing, respondent's motion to amend his answer to allege liability for the recapture tax was granted on March 28, 1975. The internal revenue agents and other officials who handled petitioner's returns were unaware of petitioner's potential liability for the tax under section 47(a)(1) until this Court's *Tri-City Dr. Pepper Bottling Co.* opinion was filed. While this long delay in raising the recapture tax issue renders respondent's position on the timeliness of the filing of the assumption agreement a bit awkward, it was within the discretion of the Court to permit the amendment. Rule 41, Tax Court Rules of Practice and Procedure; see *Commissioner v. Finley,* 265 F.2d 885, 888 (10th Cir. 1959), affg. a Memorandum Opinion of this Court, cert. denied 361 U.S. 834 (1959). Since petitioner has not shown any prejudice in dealing with the issue on its merits, we decline to strike from the record the Court's prior order permitting the amended answer to be filed.

We hold nonetheless that, under section 1.47-4(b)(2)(ii), Income Tax Regs., the agreement delivered to Romine by petitioner and its shareholders on April 17, 1970, relieved petitioner of liability for the disputed recapture tax for the period in controversy. Section 1.47-4(b)(1), Income Tax Regs., quoted above, provides in substance that "if the corporation and each of the persons who are shareholders of the corporation on the first day of the first taxable year for which the election under section 1372 is to be effective, or on the date of such election, whichever is later," execute an agreement containing stated provisions, the recapture tax shall not apply by reason of the section 1372 election. Section 1.47-4(b)(2)(i),[3] Income Tax Regs., prescribes

---

[3] Sec. 1.47-4(b)(2), Income Tax Regs., provides:

(2) *Agreement of shareholders and corporation.*

(i) The agreement referred to in subparagraph (1) of this paragraph shall be signed by the shareholders and the corporation, and shall recite that, in the event the section 38 property described in subparagraph (1) of this paragraph is later disposed of by, or ceases to be section 38 property with respect to, the corporation during a taxable year of the corporation for which the election under section 1372 is effective, each such signer agrees (a) to notify the district director of such disposition or cessation, and (b) to be jointly and severally liable to pay to the district director an amount equal to the increase in tax

the crucial terms of the agreement, stating that each signer must agree to notify the District Director of any later disposition of property for which an investment credit has been allowed or any cessation of its section 38 property status and to be jointly and severally liable for any resulting recapture tax. The agreement signed by petitioner and its shareholders meticulously meets these requirements.

Section 1.47-4(b)(2)(ii), Income Tax Regs., contains these three crucial sentences on the date on which the assumption agreement is to be filed:

The agreement shall be filed with the district director with whom the corporation files its income tax return for its taxable year immediately preceding the first taxable year for which the election under section 1372 is effective and shall be filed on or before the due date (including extensions of time) of such return. However, if the due date (including extensions of time) of such income tax return is on or before September 1, 1967, the agreement may be filed on or before December 31, 1967. For purposes of the two preceding sentences, the district director may, if good cause is shown, permit the agreement to be filed on a later date.

Respondent, whose regulation we must interpret, has provided meager guidance as to its meaning—e.g., what constitutes the filing of an agreement; how and when the District Director is to signify whether he has or has not permitted an agreement to be filed; and what constitutes "good cause." We are given no explanation of the legal standards to be employed in evaluating the facts of this case and no explanation of the administrative treatment of the various provisions of the regulation.

Such guidance as is provided by respondent as to the meaning of "good cause" as used in the regulation is a welter of confusion. On the one hand, respondent states, without supporting authority, that "good cause" is a more stringent standard than the "reasonable cause" necessary to avoid imposition of a delinquency tax under section 6651. On this theory, respondent argues that reasonable reliance upon counsel, traditionally considered "reasonable cause" under section 6651, see, e.g., *C. R. Lindback Foundation,* 4 T.C. 652 (1945), affd. per curiam 150

provided by section 47. The amount of such increase shall be determined as if such property had ceased to be section 38 property as of the last day of the taxable year immediately preceding the first taxable year for which the election under section 1372 is effective, except that the actual useful life (within the meaning of paragraph (a) of sec. 1.47-1) of the property shall be considered to have ended on the date of the actual disposition by, or cessation in the hands of, the electing small business corporation.

F.2d 986 (3d Cir. 1945), does not constitute "good cause." Respondent then contends that in any event, since petitioner did not rely upon specific affirmative advice of his counsel with respect to this issue but only upon his accountant's ignorance of the law, there was no showing of "good cause." We are then confronted with Caldwell's memorandum, set out in our Findings, signed 1 week before trial, which determines that there was no "reasonable cause" for the failure to file a timely agreement. We can only conclude that respondent himself is not sure of the meaning of the regulation.[4]

We think the "good cause" standard reflects an intent to provide a degree of flexibility in deciding when an assumption agreement will be accepted as timely. This flexibility is clearly appropriate since the whole concept of the assumption agreement, including the specified filing date, is nonstatutory. The term "good cause" is also one which gains its substantive meaning from the context in which it is used. That substantive meaning cannot be one which vitiates the purpose of the statute. We turn, therefore, to an examination of the fundamental purposes of section 47(a)(1) and its implementing regulations in the light of the facts and circumstances of the case. *Barclay White Co. v. Unemployment Comp. Bd. of Rev., Etc.,* 356 Pa. 43, 50 A.2d 336, 340 (1947); *William A. Meier Glass Co. v. Anchor Hocking Glass Corp.,* 11 F.R.D. 487, 490 (W.D. Pa. 1951). In weighing the evidence, since the issue of "good cause" was first raised in the amended answer, the burden of proof rests with respondent. Rule 142(a), Tax Court Rules of Practice and Procedure.

The purposes of the regulations under section 47(a)(1) were considered in *Tri-City Dr. Pepper Bottling Co.,* 61 T.C. at 509-510, where we pointed out that the regulations reflect an effort to mesh two separate sets of Code provisions, the investment credit provisions and the subchapter S provisions on electing small business corporations. Imposition of the recapture tax on electing small business corporations merely because they have made the

---

[4] Indeed, the lines of administrative authority under the regulation appear to be equally confused. The regulation states that the *District Director* will make a determination of whether there is "good cause" so as to permit *filing* of the necessary agreement at a later date. Romine, Chief of the Technical Branch of the Office of the District Director, believed he did not have authority to make the necessary determination and forwarded the agreement to the Service Center. Yet, Romine's successor, Bottamiller, appears to claim he has requisite authority. He makes a determination that a document delivered and processed nearly 5 years earlier may not be *filed.*

subchapter S election is a harsh result—in effect, a penalty for making the election. The regulation mitigates this harshness by allowing an assumption agreement to be filed, thereby avoiding immediate imposition of that tax. However, the agreement must obligate the corporation and its shareholders to pay any recapture tax which may arise if any of the corporation's section 38 property loses that status while the subchapter S election is effective. This is an obligation the corporation and its shareholders otherwise would not have.

In the instant case, long prior to the audit of petitioner's return for the taxable period in controversy, which began in 1972, petitioner and its shareholders delivered the assumption agreement to the Internal Revenue Service. True, the agreement was not delivered within the time specified in the regulation, but the Internal Revenue Service was not prejudiced[5] or inconvenienced by the delay. Indeed, the internal revenue agents handling the audit were not even aware of either the potential liability for the recapture tax or the tardiness of the filing of the agreement. The agreement, however, served its primary purpose. It protected the revenue against any loss of any recapture tax while the corporation had subchapter S status until the agreement was disavowed by the amended answer on March 28, 1975, or by Caldwell's memorandum of April 29, 1975, approximately 6 years from the date the return for the taxable period in controversy was filed.[6] Clearly the April 17, 1970, agreement met the substantive requirements of the regulation, and its late filing caused no harm, damage, or prejudice to anyone and gave no one any special or unfair advantage.

Indeed, any special advantage in this case is the one claimed by respondent. The Internal Revenue Service enjoyed the protection

---

[5] At the trial, respondent's counsel appeared to suggest that giving effect to the agreement would prejudice respondent by relieving petitioner of liability for the recapture tax for the taxable period in controversy. But that is precisely the result prescribed by the disputed regulations where the agreement is timely filed. Respondent has shown no prejudice or inconvenience or that petitioner obtained any advantage as a result of the late filing.

[6] This Court has recognized in other contexts that, in limited circumstances, literal compliance with all the nonstatutory details of a regulation may not be necessary. *Columbia Iron & Metal Co.,* 61 T.C. 5 (1973); *Octavio J. Valdes,* 60 T.C. 910, 913 (1973); *Alfred N. Hoffman,* 47 T.C. 218, 237 (1966), affd. per curiam 391 F.2d 930 (5th Cir. 1968); *Georgie S. Cary,* 41 T.C. 214 (1963); see also *United States v. G. W. Van Keppel,* 321 F.2d 717 (10th Cir. 1963). Directions which merely serve the orderly conduct of administrative business but which, if not met within a stated deadline, will cause no prejudice or unfair advantage to either party may not be essential. See *Fred J. Sperapani,* 42 T.C. 308, 329-333 (1964).

of the assumption agreement for 5 years. Yet, now that it is clear no liability was incurred under the agreement, respondent claims a recapture tax for the pre-subchapter S election period in controversy on the theory the assumption agreement was filed too late. Such claim is timely only because of the pendency of this proceeding. Otherwise, the statute of limitations on assessments for the period in controversy normally would have expired long ago.

We also think that respondent's actions with respect to the agreement constitute acceptance of its validity. The regulation does not state what action it contemplates the District Director will take in permitting or refusing to permit an assumption agreement to be filed on a date later than the specified one. No doubt, in view of the termination of petitioner's subchapter S status effective January 1, 1970, the District Director reasonably could have denied such permission. Holding petitioner's agreement and enjoying its protection for 5 years, however, in our view, constituted acceptance of the agreement for filing. Fairplay and commonsense dictate this conclusion.

On the other hand, if the issue as to whether the agreement would be permitted to be filed was still open when Bottamiller signed Caldwell's name to his memorandum of April 29, 1975, we think it was an abuse of discretion for him to ignore the fact that the agreement had been held so long, already had served the purposes of the regulations, and had subjected the shareholders to potential liability for the recapture tax during the period when the corporation had subchapter S status. See *Pearce v. United States,* 226 F. Supp. 702, 704 (W.D. N.Y. 1964). True, as the subsequent events have unfolded, no liability was incurred under the agreement, but neither petitioner nor the shareholders had any assurance that respondent would not contend otherwise until the limitations period for 1969 expired.

Another crucial element of "good cause" is that petitioner acted in good faith. *United States v. Iozia,* 13 F.R.D. 335, 338 (S.D. N.Y. 1952); *Czarlinsky v. Employment Security Agency,* 87 Idaho 65, 390 P.2d 822, 825 (1964); *Dwight Mfg. Co. v. Long,* 36 Ala. App. 387, 56 So.2d 685, 686 (1952). The regulation at issue went into effect on October 9, 1967, and when petitioner made the section 1372 election was a relatively recent addition to the lengthy regulations promulgated with respect to the investment credit. Petitioner's ignorance of the regulation was

shared by respondent's representatives handling this case. In electing subchapter S status, petitioner relied upon advice from reputable accountants and attorneys who, through years of association, were familiar with petitioner's tax problems but did not advise petitioner of the requirements of the regulation. As soon as the need to file the agreement was discovered, petitioner's representatives immediately notified Romine and, consistent with his suggestion, executed the necessary agreement and delivered it to him. At no time did petitioner's shareholders consider not entering into the agreement. There is no suggestion that the failure to file the agreement on time was due to anything other than inadvertence.

In *Edward F. Dixon,* 60 T.C. 802 (1973), respondent inadvertently failed to file his answer on the due date. The Rules of the Court then provided that pleadings could be filed out of time on the showing of "good and sufficient cause." The Court allowed the answer to be filed, stating (60 T.C. at 805):

in the instant case, the delay was the result of a mistake. Neither the mistake nor the delay was to any degree attributable to any willful misconduct by respondent's attorneys or agents. Upon discovery of the mistake, immediate action was taken to rectify it.

The Court also observed (p. 805) that: "Inadvertence in and of itself has been found to be good and sufficient cause." While the context in which the term "good and sufficient cause" was used in that case is different, we think the reasoning is apposite in the instant case.

In summary, the evidence presented by respondent has failed to persuade us that petitioner did not show good cause for the untimely filing of the agreement. No prejudice or inconvenience to respondent has been shown. Petitioner acted in good faith and reasonably relied upon tax counsel to advise it of the liability it would incur on electing subchapter S status. Petitioner immediately complied with all the other requirements of the regulation as soon as the need for an agreement was discovered and did so on its own initiative prior to any audit or court proceeding. The deadline stated in the regulation is not statutory, and the regulation reflects an intention to provide for flexibility in applying its deadline in order to avoid undue hardship. The Internal Revenue Service retained the assumption agreement delivered to it on April 17, 1970, and enjoyed its protection for 5 years. We do not purport to state any rule of general applicability

but, on the facts here presented, hold that respondent has not carried his burden of showing that petitioner is liable under section 47(a)(1) for an investment credit recapture tax for the taxable period July 1, 1968, to December 31, 1968.

To reflect the disposition of other issues,

*Decision will be entered under Rule 155.*