V. E. WAGNER WELL SERVICE, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
V. E. Wagner Well Service, Inc. v. Commissioner
Docket No. 13423-78.
United States Tax Court
T.C. Memo 1981-391; 1981 Tax Ct. Memo LEXIS 355; 42 T.C.M. (CCH) 523; T.C.M. (RIA) 81391; July 29, 1981. *355 In 1975, P made the election to be taxed as a small business corporation under subchapter S, I.R.C. 1954, but failed to file timely the agreement required by sec. 1.47-4(b) (2), Income Tax Regs., to avoid the recapture of investment credits as a result of the election. Held, under the circumstances of this case, there was good cause for filing the agreement late, and therefore, the investment credits received by P in prior years were not subject to recapture as a result of P's election under subchapter S. Sam G. Winstead and J. Kirk Wade, for the petitioner. Gary A. Benford, for the respondent. SIMPSON
MEMORANDUM OPINION SIMPSON, Judge: The Commissioner determined a deficiency of $ 11,772.33 in the petitioner's Federal income tax for its taxable year ending August 31, 1975. After concessions by the petitioner, the only issue to be decided is whether the investment credits received by the petitioner in prior years were subject to recapture in its taxable year ending August 31, 1975, as a result of the failure of the petitioner to file timely the assumption agreement required by section 1.47-4(b), Income Tax Regs., after it made the election to be taxed as a small business corporation under subchapter *358 S of the Internal Revenue Code of 1954. [1]
All of the facts have been stipulated, and those facts are so found. The petitioner, V.E. Wagner Well Service, Inc., a Texas corporation, maintained its principal place of business in Pampa, Tex., when it filed its petition in this case. It filed its income tax returns on the basis of a taxable year ending August 31, and we shall refer to each of its taxable years by the calendar year in which it ended. The petitioner filed its corporate Federal income tax return for its taxable year 1975 with the Internal Revenue Service Center, Austin, Tex. Prior to its taxable year 1975, the petitioner received investment credits under section 38 on property purchased for the business. The useful lives of some of the items of such section 38 property had not expired prior to the beginning of the petitioner's taxable year 1976. In September 1975, the petitioner made a valid election to be taxes as a small business corporation under subchapter S, and such election was effective September 1, 1975, the first day of the petitioner's taxable *359 year 1976. In making the election under subchapter S, the petitioner relied upon the assistance and advice of J. G. Doggett. Mr. Doggett was an experienced accountant, had dealt with numerous matters involving the Federal income tax, and had been employed by the petitioner as its accountant and tax advisor for approximately 15 years. At the time the petitioner made the election under subchapter S, Mr. Doggett was not aware that under section 1.47-4(b), Income Tax Regs., when a corporation makes the election under subchapter S, investment credits received by such corporation in prior years are subject to recapture. Nor was he aware that under such section, the corporation is permitted to avoid recapture by filing, on or before the date for filing the tax return for the taxable year immediately prior to the effective date of the subchapter S election, an assumption agreement as specified in such section. In June 1976, the petitioner sold an item of section 38 property, and in June 1977, the petitioner sold another item of such property. In the case of each item, the useful life which was taken into account in computing the investment credit for the item had expired prior to *360 the time of the sale. Sometime between June 1977 and November 30, 1977, the petitioner was audited by the IRS, and at such audit, Mr. Doggett first learned of the provisions of section 1.47-4(b), Income Tax Regs. As a result, on November 30, 1977, the petitioner mailed to the District Director of the IRS in Dallas, Tex., an amended corporate Federal income tax return for its taxable year 1975. Attached to the amended return was the following statement (the assumption agreement), executed by a representative of the petitioner and by the petitioner's shareholders: WE, THE UNDERSIGNED, each for himself or iteself, do hereby agree that, in the event any section 38 property the basis (or cost) of which was taken into account in computing the undersigned corporation's qualified investment in taxable years prior to the taxable year beginning September 1, 1975 (the first taxable year for which an election under I.R.C. Sec. 1372 has heretofore been filed by said corporation), which section 38 property has not been disposed of or otherwise ceased to be section 38 property with respect to said corporation prior to August 31, 1975, is later disposed of by, or ceases *361 to be section 38 property with respect to said corporation during any taxable year of said corporation for which the election under I.R.C. Sec. 1372 is effective, we shall (a) immediately notify the director of such disposition or cessation, as the case may be, and (b) shall, jointly and severally, be liable to pay to the district director an amount equal to the increase in tax provided by I.R.C. Sec. 47. In a cover letter attached to the amended return, the petitioner stated: The shareholders of * * * [Wagner Well] did not file the agreement statement under Income Tax Regulation 1.47-4(b) (2) following the election of the corporation in 1975 to become a Subchapter S Corporation. The taxpayer, acting in reliance on its accountant who was not aware of the election requirement, failed to prepare and file such an agreement at that time. The corporation and its shareholders were not aware of the requirement for such an agreement, and their failure to file was due solely to their reliance on the undersigned accountant. Wagner Well * * *, acting in good faith upon the advice of its accountant, respectfully submits that there is good cause *362 for the delay in filing the agreement and requests that the enclosed agreement statement be accepted pursuant to Income Tax Regulation Section 1.47-4(b) (2) (ii). At the time of filing the amended return, the petitioner also notified the District Director of the sales of section 38 property in 1976 and 1977. the assumption agreement filed by the petitioner met all the requirements of section 1.47-4(b), Income Tax Regs., as to content. However, immediately upon its filing, or soon thereafter, it was rejected by the District Director on the ground that it was untimely. In 1978, the petitioner disposed of a third item of section 38 property. As with the other items, the useful life of the third item had expired by the time of the sale. The petitioner did not inform the District Director of the sale. From the time of the petitioner's subchapter S election to the time of trial, the petitioner sold no other items of section 38 property purchased prior to the effective date of its subchapter S election. In his notice of deficiency, the Commissioner reiterated the position of the District Director that the assumption greement had not been filed timely. On that basis, he determined *363 that the investment credits received by the petitioner in prior years were subject to recapture in the petitioner's taxable year 1975 as a result of the election by the petitioner to be taxed as a small business corporation. If a taxpayer Purchases Property and receives an investment credit for such property under section 38, a portion of the credit is subject to recapture if the section 38 property "is disposed of, or otherwise ceases to be section 38 property with respect to the taxpayer, before the close of the useful life which was taken into account in computing the credit." Sec. 47(a) (1). Section 1.47-4(b) (1), Income Tax Regs., provides that if a corporation makes a valid election to be taxes as a small business corporation under subchapter S, tnen on the last day of the taxable year immediately preceding the first taxable year for which such election is effective, any section 38 property the basis (or cost) of which was taken into account in computing the corporation's qualified investment in taxable years prior to the first taxable year for which the election is effective * * * shall be considered as having ceased to be section 38 property with respect to such corporation *364 * * * Such section of the regulations also includes an exception to the foregoing rule; the section provides that recapture will not result from an election under subchapter S if the electing corporation files with the District Director the agreement specified in section 1.47-4(b) (2) (i), Income Tax Regs. In such agreement, the corporation and its shareholders must undertake to be liable for any recapture tax resulting from the disposition of section 38 property by the corporation while the corporation is a small business corporation and to inform the District Director of all sales of section 38 property. The regulations provide that such agreement must be filed on or before the due date of the income tax return for the taxable year immediately preceding the first taxable year for which the subchapter S election is effective, but that the District Director of the IRS "may, if good cause is shown, permit the agreement to be filed on a later date." Sec. 1.47-4(b) (2) (ii), Income Tax Regs.
In this case, the petitioner concedes that the assumption agreement filed by it was untimely. However, the petitioner argues that its reliance on Mr. Doggett was good cause for the late filing *365 and that, therefore, the District Director should not have rejected the agreement. The petitioner argues alternatively that section 1.47-4(b), Income Tax Regs., is invalid in requiring the recapture of investment credits when a corporation elects to be taxed as a small business corporation. On the other hand, the Commissioner takes the position that the District Director acted reasonably in rejecting the assumption agreement and that the regulation is not invalid. The Commissioner also argues that the petitioner raised the issue of the validity of the regulation for the first time on brief and that, for that reason, the Court should not consider the petitioner's argument. Initially, irrespective of whether the issue of the validity of the regulation was raised properly, it is clear that the regulation is not invalid. In Tri-City Dr. Pepper Bottling Co. v. Commissioner, 61 T.C. 508 (1974), the taxpayer made the election to be taxed as a small business corporation but failed to file an assumption agreement. The taxpayer argued that the regulation was invalid, but we held that the regulation reflected a reasonable effort to mesh subchapter S with the provisions of *366 the Code dealing with the investment credit. 61 T.C. at 509-510. We observed that an electing small business corporation is exempt from all taxes (except for the tax imposed by section 1378) imposed in chapter 1 of subtitle A of the Code, including the recapture tax of section 47, and that there is no provision in the Code requiring the shareholders of a corporation to pay recapture tax owed by the corporation. We concluded that if the regulation had not been promulgated, a corporation could avoid the recapture tax on the disposition of section 38 property by electing to be taxed as a small business corporation. For that reason, we upheld the validity of the regulation. In the present case, the petitioner recognizes that this Court upheld the validity of the regulation in Tri-City, but it urges us to overrule that case. However, it has raised no arguments not adequately considered by us in that case, and under such circumstances, we will continue to follow Tri-City. In support of its argument that there was good cause for the late filing of the assumption agreement, the petitioner relies on the fact that the late filing was the result of reliance on an *367 experienced accountant. It also insists that the Commissioner has not been prejudiced or disadvantaged by the untimeliness. The petitioner argues that such circumstances constitute good cause, and as authority for such argument, it cites United States v. Van Keppel, 321 F. 2d 717 (10th Cir. 1963), Fehrs v. United States, 214 Ct. Cl. 74, 556 F.2d 1019 (1977), Taylor v. Commissioner, 67 T.C. 1071 (1977), Bell Fibre Products Corp. v. Commissioner, 65 T.C. 753 (1976), Dixon v. Commissioner, 60 T.C. 802 (1973), and Cary v. Commissioner, 41 T.C. 214 (1963). The Dixon case involved the failure of the Commissioner to file a timely answer to a petition in this Court. Through inadvertence, the Commissioner's answer in that case was lodged 10 days late, and the issue before us was whether to permit the answer to be filed at such time. In deciding such issue, we found that the petitioner would not be prejudiced by permitting the late filing and that "An injustice completely out of proportion to respondent's inadvertent failure would occur if the Court did not permit him to file his answer. *368 " 60 T.C. at 806. Under those circumstances, we held that the Commissioner's inadvertence was sufficient cause to permit his answer to be filed late. 60 T.C. at 805. Taylor involved the recapture of farm losses under section 1251. Section 1251(c) provides that when a taxpayer sells "farm recapture property" and realizes a gain, the gain is to be treated as ordinary income up to the balance in the taxpayer's "excess deductions account." In Taylor, the taxpayers sold farm recapture property in 1970 and 1971 and realized gains, and the issue was whether there was a balance in their excess deductions account for such years. The resolution of such issue depended upon the applicability of section 1251(b)(4), which provides that a taxpayer is not required to make additions to his excess deductions account if he "elects" to compute taxable income from farming by using inventories and by capitalizing all expenditures which may properly be capitalized. Under such section, the required election is to be filed within the time for filing the tax return for the year for which the election is filed and in the manner prescribed by the regulations. The regulations *369 in effect during 1970 and 1971 required, as do those in effect now, that the election be made by attaching an appropriate statement to the tax return for the period for which the election is filed. The taxpayers in Taylor reported their gain from the sale of farm recapture property as capital gains, computed their farm income in the manner described in section 1251(b)(4), but failed to file an election in the manner prescribed by the regulations. Despite the failure of the taxpayers to file the election, we held that they were entitled to the benefits of section 1251(b)(4). 67 T.C. at 1077. We found that "respondent is not in any manner prejudiced by petitioners' actions" and that "petitioners have had no opportunity to avail themselves of hindsight to obtain an unwarranted advantage," and for those reasons, we concluded that the petitioners' failure to file the election was excusable. 67 T.C. at 1080. In Van Keppel, the taxpayer and her spouse each owned stock in a corporation. The corporation redeemed all of the stock of the taxpayer, but the taxpayer inadvertently failed to file timely the agreement required by section 302(c)(2)(A)(iii) for *370 avoiding attribution of the ownership of her husband's shares and the resulting dividend treatment of the amounts received in the redemption. [2] Such agreement was filed 2 years late. In considering whether the untimeliness was excusable, the Tenth Circuit found that "The was excusable, the Tenth Circuit found that "The interests of the Government have not been jeopardized" by the late filing and that "The Commissioner had been neither misled nor inconvenienced." 321 F. 2d at 720. Under such circumstances, the court held that the late filing was excusable. 321 F. 2d at 720. A similar result was reached in Fehrs and Cary. *371 The principles enunciated in the foregoing cases have also been applied in circumstances similar to this case. In Bell Fibre, the taxpayer, a corporation, made a valid election in 1968 to be taxed as a small business corporation under subchapter S. Prior to the effective date of the election, January 1, 1969, the taxpayer had purchased section 38 property and received investment credits. In making the election under subchapter S, the taxpayer had consulted with members of an accounting firm and with its lawyers; but it was not advised that the investment credits would be subject to recapture unless an assumption agreement was filed, and for that reason, it did not file an assumption agreement with its tax return for 1968. In March 1970, the taxpayer's lawyer notified the taxpayer of the need for the agreement, and approximately 1 month thereafter, the taxpayer filed the agreement with the office of the District Director of the IRS in Indianapolis, Ind. Such office did not notify the taxpayer as to whether the agreement was considered acceptable. In 1972, the IRS audited the taxpayer's tax return for 1968 and sent the taxpayer a notice of deficiency disallowing several deductions *372 in such return. Thereafter, the taxpayer filed a petition with this Court, and the Commissioner filed an answer. In February 1975, 2 years after the filing of the answer, the Commissioner filed an amended answer in which he determined that the taxpayer had failed to file a timely assumption agreement with the District Director and that the investment credits received by the taxpayer in prior years were consequently subject to recapture in 1968. Thereafter, on April 29, 1975, a memorandum stating that there was no reasonable cause for the late filing of the assumption agreement was executed by a delegate of the District Director. In construing the term "good cause" as used in the regulations, we declared in Bell Fibre, "We think the 'good cause' standard reflects an intent to provide a degree of flexibility in deciding when an assumption agreement will be accepted as timely." 65 T.C. at 762. We also examined the statutory and regulatory provisions relating to recapture to determine the purpose of the good cause exception and found that the exception was meant in part to mitigate the harshness of the rule requiring recapture on the making of the election under subchapter *373 S and to relieve "undue hardship." 65 T.C. at 763-765. We carefully reviewed the circumstances surrounding the making of the election and the late filing of the assumption agreement: We found that the taxpayer had acted in good faith and relied upon experienced tax counsel, that the petitioner filed the assumption agreement on its own initiative and before the audit of its return had commenced, that the Commissioner had not been prejudiced by the delay in filing the assumption agreement, that the Commissioner had not rejected the agreement for 5 years, and that it would impose an unfair burden on the taxpayer to recapture the investment credits when the Commissioner had received the benefit of having the agreement filed, albeit late. Under such circumstances, we held that there was good cause for the late filing of the assumption agreement. In response to the foregoing cases, the Commissioner argues that the courts have often refused to excuse untime-liness; such argument is undeniable. For example, in Harper v. Commissioner, 54 T.C. 1121 (1970), the taxpayers filed a tax return in which they fraudulently failed to report the gain on a sale. At their *374 trial in the Tax Court with respect to an addition to tax for fraud, they stated that they wished to elect to report the gain on the installment method of section 453. We refused to permit such election, since the petitioners' failure to make the election when they filed their return was not innocent. 54 T.C. at 1145-1146. Similarly, in J.E. Riley Inv. Co. v. Commissioner, 311 U.S. 55 (1940), the statute provides that if a mine operator desired to compute taxable income using percentage depletion, an election to do so was to be made in the operator's "first return" filed after the enactment of percentage depletion. The taxpayer in Riley innocently failed to elect percentage depletion in his first return, but filed an amended return approximately 1 year after his first return and made the election in such return. The Supreme Court held that the election was not timely since the statute set a strict time for making the election and since to excuse the delay would be to prejudice the Commissioner by giving taxpayers the benefit of hindsight in choosing the method of depletion. 311 U.S. at 58-59. Our decision in this case is governed *375 by our holding in Bell Fibre, for in our judgment, there is no material difference in the circumstances of the two cases. Bell Fibre held that as a matter of law, an assumption agreement is not to be rejected merely because it is filed after the time specified in the regulations and that the Court may review the circumstances and decide whether the District Director acted reasonably in rejecting an untimely agreement. As in Bell Fibre, the petitioner in this case acted and relied on the advice of an experienced tax accountant when it failed to file the assumption agreement with its return for 1975. It also acted promptly to file such agreement when it became aware of the requirement of the regulations. These circumstances demonstrate clearly that the petitioner was acting in good faith and that there was no attempt by it to have the advantage of recomputing its tax on the basis of hindsight. Compare Harper v. Commissioner, supra, and J.E. Riley Inv. Co. v. Commissioner, supra.The provisions of subchapter S and the regulations thereunder are extraordinarily complex, and the need for filing an assumption agreement when that election *376 is made is not one that taxpayers can be expected to be familiar with. There was no actual knowledge of the requirement when the return was filed, and there was compliance with the requirement when the petitioner and his adviser learned of it. Although Bell Fibre learned of the requirement and filed the agreement on its own initiative and prior to the audit, that difference is immaterial since we are wholly satisfied that the petitioner in this case was acting innocently and was not attempting to take advantage of the situation. In addition, the acceptance of the assumption agreement filed by the petitioner would not prejudice the interests of the Commissioner, but its rejection would impose an undue hardship on the petitioner. Although the assumption agreement was filed late, it was filed before the running of the statute of limitations, and if the petitioner had disposed of any section 38 property so as to trigger a recapture of an investment credit, the petitioner and its shareholders would have been liable for such credit in accordance with the assumption agreement. Thus, the interest of the Commissioner in collecting any taxes that became due was adequately protected. On *377 the other hand, the rejection of the assumption agreement would cause the petitioner to become liable for the recapture of investment credits even though it made no premature dispositions of section 38 property. Under these circumstances, there is no justification for refusing to accept the assumption agreement and imposing such a hardship on the petitioner. The Commissioner suggests that if we do not require taxpayers to file the assumption agreement together with the return, we will create an incentive for taxpayers not to file the agreement until they are audited and the omission is discovered. However, in this case, the parties have stipulated that the failure to file the assumption agreement timely was due to lack of knowledge of the requirement. We are not dealing with a situation in which the taxpayer was aware of the requirement and willfully delayed filing the agreement with the hope that the omission would not be discovered. Nor do we have a situation in which the taxpayer acted negligently and made an election under subchapter S without the assistance and advice of an experienced tax adviser. We are not convinced that all taxpayers, including the innocent ones like *378 this petitioner, should be penalized for filing assumption agreements late merely because some taxpayers might try to take advantage of the Commissioner in this situation. Although the Commissioner agrees that the failure to file the assumption agreement timely was due to Mr. Doggett's lack of knowledge of the requirement, the Commissioner argues that when the petitioner sold an item of section 38 property in 1976 and another item in 1977, but failed to notify the Commissoner of the sales, it manifested an intent not to be bound by an assumption agreement. Similarly, he argues that the petitioner's failure to report its sale of section 38 property in 1978 was also evidence of such intent. However, it is stipulated that Mr. Doggett was not aware of the requirement for an assumption agreement until late 1977 and that the useful lives of the properties sold in 1976 and 1977 had already expired at the time of the sales. Accordingly, there is no reason to except the petitioner to have reported the 1976 and 1977 sales. As for the 1978 sale, the District Director had already rejected the untimely assumption agreement at the time of such sale, and for that reason, and since the useful *379 life of the property sold in 1978 had also expired at the time of the sale, there is similarly no reason to expect the petitioner to have reported that sale. In our opinion, the failure to report such sales does not cast any doubt on the good faith of the petitioner. For the reasons we have discussed, we hold that there was good cause for the petitioner's untimely filing of the assumption agreement and that, therefore, the District Director acted unreasonably in rejecting such agreement. Accordingly, the investment credits received by the petitioner in prior years were not subject to recapture when the petitioner made the election to be taxed as a small business corporation. To reflect concessions, Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue.↩
2. Under sec. 302(b)(3), when a corporation redeems all the stock owned by a shareholder, the shareholder is entitled to treat the redemption as a sale or exchange of his stock. However, sec. 302(c)(1) provides that the attribution rules of sec. 318(a) normally apply to redemptions, and under such rules, a taxpayer is considered to own the stock of his spouse, among other persons. The attribution rules do not apply to complete redemptions of stock if several conditions are met. One of the conditions is that the taxpayer-distributes, at such time and in such manner as may be prescribed by the regulations, file an agreement to notify the IRS of any acquisition of an interest in the corporation within a 10-year period and to retain certain records. Sec. 1.302-4(a), Income Tax Regs.↩, provides that such agreement is to be filed in the form of a separate statement signed by the distributee and attached to the tax return for the year in which the distribution occurs.