RECREATION INVESTMENTS, INC., Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Recreation Invest., Inc. v. Commissioner
Docket No. 4793-79
United States Tax Court
T.C. Memo 1982-3; 1982 Tax Ct. Memo LEXIS 744; 43 T.C.M. (CCH) 251; T.C.M. (RIA) 82003; January 5, 1982. *744 Held: Petitioner's failure to file a timely agreement under section 1.47-4(b), Income Tax Regs., was due to good cause and respondent abused his discretion in failing to validate petitioner's untimely agreement. Robert H. Chandler, for the petitioner. Martha E. Rist, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined a deficiency of $ 4,550.51 in petitioner's tax for the year ended March 31, 1976. The issue presented for decision is whether petitioner has shown good cause for the untimely filing of a shareholder agreement wherein each shareholder agreed to be jointly and severally liable in the event that the actions of petitioner, a Subchapter S corporation, required recapture of investment tax credits. Should we determine that such good cause existed, then we must decide whether respondent abused his discretion through a failure to recognize the untimely agreement. FINDINGS OF FACT Some of the facts have been stipulated and are so found. These facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner, Recreation Investments, Inc., is a corporation organized under the laws of the State *745 of Minnesota and had its principal place of business in Bloomington, Minnesota, at the time of the filing of its petition herein. Petitioner filed a timely Federal corporate income tax return for the year ended March 31, 1976 using the accrual method of accounting. On April 1, 1976 the outstanding stock of petitioner was owned by its corporate officers as follows: Thorvald R. Hansen
210 shares
Thorvald A. Hansen
145 shares
Philip G. Hansen
45 shares
Sometime prior to November 28, 1975 officers of petitioner consulted with the corporation's accountants to discuss the advisability of a Subchapter S election. A decision was made to elect Subchapter S status. There was no discussion at that time concerning the recapture of investment credit. On November 28, 1975 a special meeting of petitioner's board of directors was held at which time a resolution was adopted to elect to be taxed as a small business corporation. It was resolved that the president of the corporation, Thorvald R. Hansen, be instructed to execute and file necessary documents to effect the election. Although Hansen was responsible for seeing that tax returns were filed, he was not very familiar with tax matters. On or about *746 April 28, 1976, petitioner filed Form 2553 with the Internal Revenue Service evidencing an election to be taxed as a small business corporation. Respondent accepted the election as reflected in his letter to petitioner dated May 4, 1976 thereby validating the election for the taxable year beginning April 1, 1976. Form 2553, Election by Small Business Corporation, was executed on behalf of petitioner by its president and managing officer, Thorvald R. Hansen. Hansen executed the document after petitioner's accountant supplied the form. The accountant also explained to petitioner's officers how to complete the form by detailing the following: the fact that the names of shareholders, their signatures and the number of shares they owned should be disclosed and the time within which the election form was required to be filed. In making the Subchapter S election, petitioner was not advised and therefore was not aware that section 1.47-4(b), Income Tax Regs., provides that a Subchapter S election would cause all of its section 38 property to cease to be section 38 property and that petitioner would be liable for a tax attributable to recapture of investment credits unless a prescribed *747 agreement was filed. Accordingly, no agreement pursuant to section 1.47-4(b), Income Tax Regs., was filed by petitioner and its shareholders before the due date of its return for the taxable year ended March 31, 1976. The reverse side of Form 2553 contains specific instructions regarding qualification for and execution of an election to be taxed as a small business corporation. Part J of the instructions provides: J. Investment credit property--Section 47 of the Internal Revenue Code and the regulations thereunder provide that section 38 property (relating to the qualified investment in certain depreciable property which was the basis for a credit against tax) ceases to be section 38 property when a corporation makes a valid election under section 1372 to be an electing small business corporation, and the tax recomputation provisions of section 47 will apply. Such corporations and their shareholders may, however, execute the agreement specified in Section 1.47-4(b)(2) of the regulations so that the recapture provisions of Section 1.47-1(a) will not apply to such section 38 property. Refer to section 47 of the Internal Revenue Code and the regulations thereunder. Hansen did not *748 read these instructions prior to completing Form 2553. Although petitioner's accountants prepared corporate financial statements and petitioner's tax returns, they did not physically prepare the small business corporation election form. Petitioner timely filed its Federal corporate income tax return, Form 1120S, for the taxable year ended March 31, 1977. On page 3 of the return, in response to the question "Was an agreement filed under section 1.47-4(b) of the regulations?", a mark was made indicating "No". Although Hansen reviewed the return, which was prepared by a CPA, his lack of familiarity with tax matters allowed the response to go unnoticed. On December 29, 1977 petitioner was informed of respondent's intention to audit its corporate income tax return for the taxable year ended March 31, 1976. In January of 1978 Hansen contacted his attorney so as to be sure that all was in order for the audit. The attorney later called Hansen to inform him that the investment credit recapture consent form was never executed. On January 28, 1978 the attorney telephoned petitioner's accountant to inform him of the failure to execute the consent. The accountant then prepared the consent *749 and sent it to petitioner for its signing. On or about February 9, 1978 petitioner filed with respondent an Agreement of Electing Subchapter S Corporation and its Shareholders under Regulation 1.47-4(b)(2)(ii). None of the section 38 property was disposed of by the corporation prior to execution of the consent. By letter dated February 22, 1978, respondent acknowledged receipt of the agreement. Respondent did not issue a formal validation or rejection of the consent form. In his notice of deficiency dated January 15, 1979, respondent determined that $ 4,101.60 of investment credits were required to be recaptured in petitioner's tax year ending March 31, 1976. [1] Additionally, respondent determined that $ 565.53 of investment credits claimed by petitioner in 1976 were not allowable. OPINION Sections 38 and 46 [2] allow as a credit against tax *750 a specified percentage of the taxpayer's investment in certain qualified depreciable property, termed section 38 property, placed in service during the taxable year. Where a credit has been allowed for property which is subsequently disposed of by the taxpayer prior to the expiration of its useful life or which subsequently ceases to be section 38 property before termination of its useful life, section 47(a)(1)[3] *751 imposes a "recapture" tax in the year of such disposition or cessation. Section 1.47-7(b)(1), Income Tax Regs., provides in part that an election under section 1372 to be taxed as a small business corporation triggers the recapture of investment tax credits. Such recapture is premised on the consideration that property subject to the investment credit whose useful life has not expired ceases to be section 38 property on the last day of the taxable year immediately preceding the first taxable year that the corporation is taxed as a small business corporation. The validity of this regulation has been upheld by this Court. Tri-City Dr. Pepper Bottling Co. v. Commissioner, 61 T.C. 508 (1974). The regulation, however, does provide the electing small business corporation with an avenue of relief from the recapture tax provisions. Such relief may be realized if the corporation and its shareholders agree to assume liability for any recapture tax which may arise if any of *752 the corporation's section 38 property acquired prior to the election is disposed of or ceases to be section 38 property while the election is effective. Section 1.47-4(b)(1), Income Tax Regs.
Provisions for the timing of the filing of an assumption agreement by the corporation and its shareholders are found in section 1.47-4(b)(2)(ii), Income Tax Regs., as follows: The agreement shall be filed with the district director with whom the corporation files its income tax return for its taxable year immediately preceding the first taxable year for which the election under section 1372 is effective and shall be filed on or before the due date (including extensions of time) of such return. However, if the due date (including extensions of time) of such income tax returns is on or before September 1967, the agreement may be filed on or before December 31, 1967. For purposes of the two preceding sentences, the district director may, if good cause is shown, permit the agreement to be filed on a later date. On April 28, 1976 petitioner filed its election to be taxed as a small business corporation. On or about February 9, 1978 petitioner filed with respondent a document entitled Agreement *753 of Electing Subchapter S Corporation and its Shareholders under Regulation 1.47-4(b)(2)(ii). Thus, the parties agree that the filing of the assumption agreement was untimely. Petitioner, however, argues that its tardiness was due to good cause and therefore the agreement should be viewed as satisfying the mandate of the regulation. Respondent maintains that the facts herein do not spell out a case for "good cause" and that even assuming that good cause for lateness existed, respondent has not abused his discretion in failing to recognize the untimely agreement. Section 1.47-4(b), Income Tax Regs., reflects an effort to mesh Subchapter S of the Code with the investment credit provisions. Tri-City Dr. Pepper Bottling Co. v. Commissioner, supra, at 509. Imposition of the recapture tax on a corporation solely because of a Subchapter S election is a harsh result. The regulation seeks to mitigate the harshness by providing for the execution of an assumption agreement by the corporation and its shareholders. Bell Fibre Products Corp. v. Commissioner, 65 T.C. 753, 762-763 (1976). In Bell Fibre Products Corp. the taxpayer made a valid election under section 1372 effective January 1, 1969. *754 In making the election, the taxpayer was not advised and, therefore, was not aware of the recapture tax and the possibility of filing an assumption agreement to sidestep the tax. Through its attorney, the need for the agreement became apparent to the taxpayer on March 11, 1970. On April 17, 1970 an executed agreement was received by the office of the District Director. On April 29, 1975, just 7 days prior to the trial of the case, the District Director officially considered and rejected the agreement. We held that the taxpayer in Bell Fibre Products Corp. was not liable for the recapture tax. Our holding was premised upon the following factors: (1) The Internal Revenue Service was not prejudiced or inconvenienced by the late filing. (2) The agreement served its primary purpose of insuring against government revenue loss. (3) The taxpayer acted in good faith and reasonably relied upon tax counsel to advise it of the liability it would incur upon a Subchapter S election. The fact that the regulation governing the recapture tax liability was a relatively new regulation pointed to petitioner's good faith. (4) The deadline stated in the regulation is not statutory and the regulation *755 reflects an intention to provide for flexibility in applying its deadline in order to avoid undue hardship. (5) The government did not take action on the assumption agreement for a period of 5 years. Thus, it enjoyed the protection afforded by the agreement thus paving the government's way for a wait and see approach regarding liability for the recapture tax. Thus, we thought it utterly unfair and illogical to allow the government to impose the recapture on the corporation when the agreement rested in government hands for 5 years without an ultimate resolution of the issue. In the instant case the burden rests upon petitioner to prove that respondent's determination is erroneous. Rule 142(a), Tax Court Rules of Practice and Procedure. We believe that petitioners have sustained that burden. Petitioner relied upon its accountants to properly advise it on how to effect a Subchapter S election. Officers of the corporation were not made aware of the necessity for filing an agreement that would allow the corporation to avoid recapture of investment credits. The corporation resolved that Thorvald R. Hansen, the corporation's president, would be authorized to effect the Subchapter S *756 election. Yet, it is clear from the record that Hansen was not well versed in matters of taxation. Thus, it is evident that his reliance on his accountants for the preparation of income tax returns and for advice concerning the execution of the relevant consent was required. We further believe that had petitioner been advised of the necessity to file the consent at the time of its Subchapter S election, that it and its shareholders would have so filed the consent. Petitioner has shown good faith reliance upon its accountants and has underscored the oversight of its accountants as the reason for failure to file a timely agreement under section 1.47-4(b), Income Tax Regs. Accordingly, we conclude that at no time did petitioner or its shareholders engage in conduct aimed at circumventing the purpose of the regulation. Moreover, the government has not been inconvenienced or prejudiced in any manner. There was no dispositions of section 38 property during the period that no agreement under the regulations was filed. Considering the good faith of petitioner and that the agreement served its primary purpose of insuring against government revenue loss and in view of an intent to provide *757 flexibility with the nonstatutory deadline involved herein, we hold that petitioner has shown that its failure to file a timely agreement regarding the recapture tax was due to good cause. Respondent argues that even if good cause is shown, his determination must be sustained because it was not an abuse of discretion to reject the untimely agreement. The argument is buttressed by the assertion that for the approximate 2 year period when no agreement was executed there existed the potential for dispositions of section 38 property with no recapture tax liability. While the potential for a disposition of section 38 property existed, we believe that the flexibility inherent in the relevant nonstatutory provision is to be applied where the taxpayer has acted in good faith reliance upon its advisors and the government has not been prejudiced. Respondent further points to the fact that the execution of the agreement to recapture investment credits was triggered by notification of an upcoming audit. We note, however, that execution of the agreement did not follow a particularized inquiry into the matter by respondent's agents. Rather, without specific prompting from respondent's agents, *758 petitioner's attorney realized that there was an oversight and remedial measures were swiftly taken. We have found that these circumstances were grounded upon good faith and not any intention to sidestep potential tax liability. In light of these revelations, we believe it was an abuse of respondent's discretion to reject the untimely agreement. We deem it significant to underscore our appreciation of the fact that respondent is empowered to promulgate needful rules for enforcement of the revenue laws. Our decision herein is aimed only at the good cause and discretionary provisions of section 1.47-4(b), Income Tax Regs., and does not purport to state any rule of general applicability. See Bell Fibre Products Corps. v. Commissioner, supra at 765-766. We do not, by our decision, sanction the unintentional failure to comply with respondent's regulations. Rather, we believe, considering the intention to provide flexibility with the regulatory deadline, the good faith shown by petitioner and the lack of prejudice and inconvenience to the government, that respondent misapplied its own regulation. Accordingly, we hold that petitioner has demonstrated that its failure to file a timely *759 agreement under section 1.47-4(b), Income Tax Regs., was due to good cause and the failure of respondent to validate the agreement was an abuse of his discretion. Decision will be entered for the petitioner. Footnotes
1. The recaptured investment credits relate to credits taken by petitioner in 1974 and 1975. The increase in petitioner's tax attributable to recapture was determined as follows: ↩
For the year ended March 31, 1974
$ 186.00 For the year ended March 31, 1975
3,915.60 4,101.60 Recapture tax shown on March 31, 1976
return
(116.62)
Tax increase
$ 3,984.98 2. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue. ↩
3. Section 47(a)(1) provides: SEC. 47. CERTAIN DISPOSITIONS, ETC., OF SECTION 38 PROPERTY. (a) General Rule.--Under regulations prescribed by the Secretary-- (1) Early disposition, etc.--If during any taxable year any property is disposed of, or otherwise ceases to be section 38 property with respect to the taxpayer, before the close of the useful life which was taken into account in computing the credit under section 38, then the tax under this chapter for such taxable year shall be increased by an amount equal to the aggregate decrease in the credits allowed under section 38 for all prior taxable years which would have resulted solely from substituting, in determining qualified investment, for such useful life the period beginning with the time such property was placed in service by the taxpayer and ending with the time such property ceased to be section 38 property.